Loren KELLEY, Appellant,

v.

The STATE of Texas, Appellee.

No. 08–81–00194–CR.

Court of Appeals of Texas, El Paso.

Dec. 22, 1982.

Tony Chavez, Odessa, for appellant.

Mike Wade, Dist. Atty., Monahans, for appellee.

Before STEPHAN F. PRESLAR, C.J., and WARD and SCHULTE, JJ.

## OPINION

WARD, Justice.

This is an appeal from a conviction for aggravated rape. The jury assessed punishment at life imprisonment. We affirm.

The testimony revealed that the victim and a co-worker were driving from Odessa to the former's home in an adjacent rural area. Their vehicle ran out of gas. Appellant stopped and offered them a ride at approximately 9:00 p.m. The victim entered the front passenger seat. Her companion entered the rear seat and fell asleep. Instead of taking the two for gasoline, Appellant took a knife from the glove compartment and threatened the victim's life. He drove behind a remote building near Monahans, Texas, and began a series of sexual assaults on the victim. The latter managed to awaken her companion, who fled from the car. She reached the interstate highway and stopped a truck. The driver took her to the Ward County Sheriff's substation where she reported the incident. Being unfamiliar with the area and

having reached the highway by travelling cross-country, it took several hours for her to direct the deputies to the site. Appellant and the victim were gone.

Shortly before 7:00 a.m., Appellant rented a motel room in Pecos, Texas, where he continued the assault on the victim. Throughout this occurrence, the victim was repeatedly raped, sodomized orally and anally, sodomized with foreign objects, and subjected to cigarette burns on her breast and genitals. The knife was constantly used to threaten her. Appellant ultimately abandoned the victim at the motel. She summoned help from the motel operators. Deputies were able to trace the Appellant through his name, license plate and vehicle description entered on the motel registration card. The victim and her companion positively identified the Appellant. His father identified the handwriting on the registration card as that of his son.

The sole ground of error raised on appeal asserts ineffective assistance of counsel. The applicable standard is reasonably effective assistance of counsel, without guarantee of success, absence of errors or intrusion into logical trial strategy. *Ex Parte Duffy*, 607 S.W.2d 507 (Tex.Cr.App. 1980). Of three bases for this complaint, two are traditional and are without merit in his case. Counsel permitted the State to introduce a police photograph of the Appellant arising out of a 1975 arrest. The photograph was part of a pretrial display shown to the witnesses. Appellant contends that the introduction of the photograph suggested an extraneous offense to the jury. We do not agree. The careful trial judge had the prosecution excise the date and other written matter from the photograph before submission to the jury. The jury was not advised of the circumstances leading to the photograph.

Appellant next complains that counsel's trial strategy was so aimless that it amounted to no strategy at all. Counsel's initial approach was to establish an alibi for the Appellant at 8:00 p.m., 10:30 p.m. and 1:00 a.m. on the dates of the alleged offense. The alibi was offered through a

brother and sister who were friends of Appellant's family. As trial progressed, counsel shifted away from a pure alibi defense to a defense of consent. The alibi evidence still presented a time sequence inconsistent with the abduction and aggravated rape scenario depicted by the victim and her companion. In that regard, it still served tactically to impeach the State's witnesses. Counsel's course change was undoubtedly a result of the manner in which certain evidence developed during trial. The night before the alleged offense, the victim and her husband argued and separated, the culmination of prolonged marital discord. The place where her vehicle ran out of gasoline was well beyond the turn-off to her home. Both women worked in a cocktail lounge in Odessa. The victim's bank bag and her companion's purse were found in Appellant's vehicle. A medication bottle apparently containing an amphetamine was found in the purse. The bank bag contained a syringe which the victim identified as her own. She testified that she used such syringes for hormone and vitamin injections necessitated by a hysterectomy. Medical records confirmed her prescriptions, but accompanying testimony indicated that the capacity of the syringe and the length of its needle were not the most convenient for the prescribed dosage and type of medication. Though unsuccessful, trial counsel's tactical approach was not aimless. Against the pure alibi defense, the State had aligned the testimony of the victim and her companion identifying the Appellant, the confirming evidence from the motel registration and the purse and bank bag found in the Appellant's vehicle. The ultimate strategy adopted suggested marital conflict, a possibility of spouse abuse, drug abuse by the victim and sexual consent. There was evidence to support such a theory. A finding of ineffective assistance of counsel will not be based upon a hindsighted view of the failure of a logical strategy.

■ The final basis for the claim of ineffective assistance is the alleged unethical and illegal action of the trial counsel in attempting to dispose of evidence. One day prior to trial, counsel met with the two alibi witnesses in his office. Appellant's father entered and, in the presence of the two witnesses, presented counsel with the purse belonging to the victim's companion. After police searched his son's vehicle, the father found the purse in the trunk. He removed it and left it hidden in a storage shed at his home until the time he tendered it to trial counsel. Counsel opened the purse and found the victim's blood-stained brassiere and pantyhose. Counsel commented to the effect that Appellant must have done it after all. He threw the brassiere and hose into his wastebasket and advised his three witnesses that he had not seen the items. The female alibi witness reported the incident to the district attorney's office. An investigator was sent to the office and retrieved the two items from a trash receptacle behind counsel's office. The events related above were developed outside the presence of the jury. Before the jury, counsel introduced the purse and suspected amphetamines through Appellant's father. The father's testimony indicated that he brought the purse and contents, intact, from its hiding place directly to trial counsel at the courthouse on the day of his testimony. Defense counsel stipulated that this was the first time he had seen the purse. On cross-examination, the father was questioned about the presence of a brassiere and pantyhose in the purse. After several evasive responses, he lapsed into an absence of recollection. On rebuttal, the State recalled the victim who identified the clothing as her own. The State then recalled the female alibi witness, who not only recanted her alibi testimony but testified that she had seen the brassiere and pantyhose in the purse two days prior to the time testified to by Appellant's father.

Earlier, during the State's case-in-chief, trial counsel had cross-examined the victim as to the location of her brassiere and pantyhose, unquestionably believing all the while that he had disposed of them.

Appellant contends that these actions by trial counsel were so outrageous that they inflamed the minds of the jury, resulting in his life sentence. At the outset, we note

that the manner in which this offense was committed was so heinous as to virtually justify a finding that the life sentence was beyond a reasonable doubt the product of Appellant's conduct and not that of his trial counsel. As reprehensible as counsel's actions were, they are but a pale shadow in comparison to the brutal assault on the victim.

The appellate complaint fails, however, for two other significant reasons. Appellant contends that, because he was in custody and took no part in counsel's misconduct, those actions should not be attributed to him. We disagree. The purse containing the bloody brassiere and hose was undoubtedly placed in the vehicle's trunk by him after abandoning the victim. Hearing the testimony offered on his behalf, coupled with the cross-examination of the victim, he had to know one of two things. Either his father was presenting false testimony to the jury concerning the purse, unaided by trial counsel, or trial counsel, acting in concert with the father, was presenting a perjured defense. In either event, the deception is attributable to him and will not support a reversal for ineffective assistance *of counsel.*

■ Secondly, the degree to which this deception was exposed to the jury does not justify reversal. The jury received a highly expurgated version of what transpired. The Defense presented the purse and pills, with testimony that it was found in the vehicle, immediately concealed, and finally brought intact directly to the courtroom. Counsel stipulated he had not seen it before. The father evaded questions concerning the brassiere and hose. The victim was recalled to identify the items, and the alibi witness was recalled to testify that she had seen them in the purse two days earlier. The jury was not advised where she had seen the items. None of the events which occurred at counsel's office were exposed. The deputy who discovered the items in the trash behind counsel's office was only called outside the presence of the jury. In short, the deception was never presented to the jury as misconduct by trial counsel. It was

not even addressed during final argument. The jury was aware that the recanting alibi witness was a close friend of Appellant's family. The most likely conclusion to be reached by the jury was that the alibi witness had seen the items in the custody of Appellant's father away from the courthouse. False testimony from a protecting parent would naturally have a much different effect on the jury than criminal conduct on the part of an attorney in presenting his client's defense.

In summary, we find that the restrained manner in which this deception was disclosed forestalled any claim of ineffective assistance of counsel. In addition, counsel's misconduct, whether perceived by the jury or not, was attributable to the Appellant as a result of his knowledge of the false defense. Ground of Error No. One is overruled.

The judgment is affirmed.