618 So.2d 337 (1993)
Robert W. DeHAVEN, Appellant,
v.
STATE of Florida, Appellee.
No. 92-04570.
District Court of Appeal of Florida, Second District.
May 14, 1993.
PER CURIAM.
Robert DeHaven appeals the summary denial of his motion for postconviction relief. We affirm.
DeHaven is serving a life sentence for first degree murder. Of the four grounds raised in the motion, only two merit discussion: knowing use by the state of perjured testimony and ineffective assistance of counsel.
A summary of the facts of the case is necessary to fully understand both these issues.[1] Very little can be described as undisputed. The victim, William Post, was shot inside DeHaven's home in Belleaire Beach. Witnesses appear to have agreed that Post was a stranger to DeHaven. At this juncture the facts diverge. There are at least three separate accounts of Post's death, two coming from DeHaven himself.
First, there is the version DeHaven now claims is the truth: DeHaven killed Post in *338 self-defense. We might expect that the motion would set forth this latest version of events in some detail. In our opinion, it does not.
Second, the version DeHaven offered to police immediately after the shooting, and the substance of his trial testimony: Post was one of several persons who had joined DeHaven in a round robin of drinking, which ultimately adjourned to DeHaven's residence. Most in attendance decided to dine in a nearby restaurant, leaving only DeHaven and Post. Both men then dozed off. Shortly after DeHaven awoke, an intruder broke into the house shooting a gun. Post was killed during this melee. DeHaven dived beneath a table to save himself and did not get a good look at the intruder.
Finally, the version related by Robert Mitchell, a cellmate of DeHaven who claimed to have received DeHaven's jailhouse confession: DeHaven was involved in a cocaine transaction with his guests. Post showed up unexpectedly and, after the others left for the restaurant, demanded a share of the profits and threatened to go to the police if he did not receive it. DeHaven went outside, under the pretense of getting cigarettes, and removed a gun from his automobile. He shot Post twice. The gun misfired, whereupon DeHaven retrieved a second gun from his bedroom and kept shooting. DeHaven then threw the guns into the canal, went into the bathroom, and washed the gunshot residue from his hands.
The third version is consistent with some of the circumstantial evidence at DeHaven's trial. When police arrived at DeHaven's residence, they observed that the door and glove box of DeHaven's car were ajar. The sink in DeHaven's bathroom appeared to have been recently used. The four wounds in the victim's body stemmed from two different types of bullet. Ballistics testing traced these bullets to two pistols, both recovered from a canal behind DeHaven's home. One of the pistols was registered to DeHaven, and the other was being kept by DeHaven for a friend.
Additional circumstantial evidence exists to undercut DeHaven's trial testimony. Ballistics evidence indicated that the path of at least some of the bullets was from DeHaven's kitchen outward, the opposite of the expected trajectory had the mysterious gunman entered from the front as DeHaven described. According to police DeHaven initially denied having any weapons in the house, telling the investigating officer that his guns were with someone in North Carolina. As noted, one of the guns actually belonged to a friend; when he inquired about it after the shooting, DeHaven said, "The police will find it anyway." Finally, two persons happened to be canoeing past the house at about the time of the shooting, and testified that the shots were fired in groups about two minutes apart  consistent with DeHaven fetching the second gun, less consistent with a barrage from a lone gunman.

I. KNOWING USE OF PERJURED TESTIMONY
DeHaven now contends that his cellmate, Mitchell, completely fabricated his testimony and that the state had advance knowledge Mitchell planned to testify falsely. DeHaven claims that a private investigator interviewed Mitchell in 1991, at which time Mitchell admitted DeHaven never told the "drug deal" story. DeHaven has affidavits from other cellmates to the effect Mitchell admitted perjuring himself. Mitchell, however, has refused to sign an affidavit to this effect.
Mitchell also testified, purportedly falsely, that the state offered him no consideration for his testimony. In fact the state agreed to a five-year sentence in a pending prosecution. Mitchell allegedly told cellmates that he was instructed by the state not to reveal this deal. Moreover, Mitchell told the cellmates that the prosecutor "edited" his story to make it more consistent with other evidence  basically, telling Mitchell exactly what to say.
The requirements for obtaining relief for the use of perjured testimony are detailed in State v. Matera, 266 So.2d 661 (Fla. 1972). First, the testimony must have been "the basis for the conviction." Matters which go only to the credibility of a *339 particular witness will not suffice. Second, the state must have knowingly employed perjured testimony. Third, the fact the testimony was perjured must have been unknown to the defendant at the time of the trial and not ascertainable through diligent investigation and preparation. In the present case DeHaven knew, having deposed Mitchell, what his testimony would be. Furthermore, DeHaven has only hearsay evidence that Mitchell would recant his trial testimony. Cf. Comfort v. State, 597 So.2d 944 (Fla. 2d DCA 1992). We believe the trial court ruled correctly when it rejected this claim.

II. INEFFECTIVE ASSISTANCE OF COUNSEL
The claim of ineffective counsel is based primarily upon a rather surprising assertion. DeHaven, who was represented by a series of attorneys at the trial level, alleges that he related two different versions of Post's death to his first attorney. However, he also claims to have confirmed, at some point, that the self-defense story was the true one. The attorney to whom these differing accounts were told then withdrew from the case for unspecified reasons. DeHaven retained new counsel who stated he would be glad to use either story, and in fact preferred the one about the masked intruder.
Our research has uncovered few published decisions discussing the right to relief after knowing use of a perjured defense. More common are the cases dealing with attorneys who believe a client or defense witness would, if called to the stand, commit perjury, and who refuse to be a party to such misconduct. See, e.g., Sanborn v. State, 474 So.2d 309 (Fla. 3d DCA 1985). Although the extent of the remedial steps expected of counsel has been hotly debated, there is little doubt that "a defendant's constitutional right to the effective assistance of counsel does not include the right to require his lawyer to perpetrate a fraud on the court." State v. Lee, 142 Ariz. 210, *, 689 P.2d 153, 159 (1984). See also Herbert v. United States, 340 A.2d 802 (D.C. 1975); State v. Henderson, 205 Kan. 231, 468 P.2d 136 (1970); Irvin v. State, 744 S.W.2d 451 (Mo. App. 1987); State v. Robinson, 290 N.C. 56, 224 S.E.2d 174 (1976).
The outcome has not proven different in those rare cases where a lawyer is accused of active collusion with the defendant. For example, in Kelley v. State, 644 S.W.2d 571 (Tex. App. 8th Dist. 1982), defense counsel attempted to dispose of evidence. Though describing this action as "reprehensible," 644 S.W.2d at 574, the court found evidence in the record of defendant's acquiescence in the tactic and so chose to sustain the conviction. More to the point of the instant case, courts have disallowed relief to the defendant who "attempts to reap a windfall new trial on account of his own perjury." Commonwealth v. McNeil, 506 Pa. 607, *, 487 A.2d 802, 807 (1985). Though "effective counsel always  that is, by definition  conduct[s] himself in accordance with the Disciplinary Rules," to award a new trial to the client of one who is "ineffective" in this peculiar sense "would be to reward a perjurer for his perjury." Commonwealth v. Alderman, 292 Pa.Super. 263, *, 437 A.2d 36, 40-41 (1981).
Assuming it to be true that DeHaven provided counsel with differing versions of the shooting, this in and of itself does not implicate counsel in the subornation of perjury. "Mere suspicion or inconsistent statements by the defendant alone are insufficient to establish that the defendant's testimony would have been false." Sanborn, 474 So.2d at 313 n. 2. Admittedly the unequivocal wording of the motion goes father. However, the cases quoted above  with which we agree  render it immaterial whether the facts in DeHaven's motion are true or not. This motion does not present the picture of a hapless defendant whose lawyer knowingly or negligently ignored available evidence in favor of a less viable defense, nor of an unsophisticated individual deceived by an overzealous or unscrupulous advocate. It is an admission of having knowingly perpetrated a fraud upon the court. Even if it were true that counsel joined in or encouraged such misconduct *340  and we have only DeHaven's allegation this occurred  this might be a matter for the Florida Bar, but would not require vacation of DeHaven's conviction.
An additional complaint of ineffective assistance of counsel is grounded in counsel's alleged failure to produce or even speak to fellow inmates who knew Mitchell planned to lie at DeHaven's trial. As to this claim, the motion does not demonstrate a likelihood of a different outcome had counsel proceeded as DeHaven now suggests. Counsel's cross-examination of Mitchell indicates a familiarity with what those inmates might have said at trial. In fact, Mitchell admitted lying to one of the inmates about having negotiated a deal for leniency.
Affirmed.
PATTERSON, A.C.J., and ALTENBERND and BLUE, JJ., concur.
NOTES
[1] Much of what follows is taken from the transcript of DeHaven's trial, which the trial court attached to its order denying postconviction relief.