**Marcus G. ARNETT, Appellant,**

v.

**STATE of Alaska, Appellee.**

No. A–5929.

Court of Appeals of Alaska.

May 9, 1997.

John C. Pharr, Anchorage, for Appellant.

W.H. Hawley, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before BRYNER, C.J., and COATS and MANNHEIMER, JJ.

## OPINION

BRYNER, Chief Judge.

Marcus G. Arnett was tried before a jury for sexually abusing his step-daughter, M.A. Arnett absconded in mid-trial. Trial continued in his absence, and the jury convicted him of three counts of first-degree sexual abuse of a minor in violation of former AS 11.41.434(a)(2)(B). Arnett was later arrested as a fugitive in Kentucky and extradited to Alaska; he pled no contest to an additional charge of wilful failure to appear in violation of AS 12.30.060(1). We affirmed Arnett's conviction and sentence on the sexual abuse

charges in *Arnett v. State*, Memorandum Opinion and Judgment No. 2710 (Alaska App., May 26, 1993). We affirmed his sentence on the failure to appear charge in *Arnett v. State*, Memorandum Opinion and Judgment No. 2480 (Alaska App., July 29, 1992).

After losing both appeals, Arnett filed an application for post-conviction relief, alleging ineffective assistance by his trial counsel. Upon considering affidavits submitted by Arnett and deposition testimony by his trial counsel, Superior Court Judge Joan M. Woodward rejected Arnett's application. Arnett appeals. We affirm.

Arnett first advances four issues addressing the competency of his counsel's performance at trial. Arnett asserts that his trial counsel was ineffective in failing to call witnesses to show why he had obtained a vasectomy, in failing to present evidence that M.A. suffered from sexually transmitted diseases, in failing to introduce certain telephone records, and in failing to establish that M.A. had seen her family after 1985.[1]

To obtain relief on these issues, Arnett was required to "establish that [his counsel] failed to 'perform at least as well as a lawyer with ordinary training and skill in the criminal law.'" *Tucker v. State*, 892 P.2d 832, 834 (Alaska App.1995) (quoting *Risher v. State*, 523 P.2d 421, 424 (Alaska 1974)). The law presumes that trial counsel was competent and that counsel's decisions were motivated by sound tactical considerations. *State v. Jones*, 759 P.2d 558, 569 (Alaska App. 1988). To overcome that presumption, Arnett was required to present "evidence ruling out the possibility of a tactical reason to explain counsel's conduct." *Id.* Without evidence negating tactical choice by counsel, "the presumption of competence remains unrebutted and operates to preclude a finding of ineffective assistance." *Id.* We consider each of Arnett's claims in turn.

Arnett first raises the issue of his vasectomy. At trial, M.A. testified that Arnett had undergone a vasectomy "[s]o he wouldn't get me pregnant. He wanted to be

---

1. Arnett mentions, without elaboration, a variety of other points he raised below. Since Arnett does not specifically argue these other points in his brief, we do not consider them.

sure." Arnett argues that his trial counsel was ineffective because she "did nothing to rebut the implication created by the State that Arnett had been 'fixed' to have sex with M.A. This was not the case and could have easily been proved." Arnett contends that his trial counsel should have called his ex-wife or his sister, Judy Barton.

The record does not support Arnett's claim of incompetence. Initially, it is noteworthy that Arnett has failed to establish that either his ex-wife or Barton had any admissible evidence to offer.[2] The affidavits do not specify the witnesses' basis of knowledge, but they strongly suggest that the proffered testimony concerning Arnett's reasons for obtaining a vasectomy would have been based on hearsay.

Moreover, during the deposition, Arnett failed to ask his trial counsel to explain why she had failed to call Arnett's ex-wife as a witness at trial. Arnett did question his counsel about her failure to call Barton; but counsel explained that she believed Barton had no relevant evidence to offer. Arnett has failed to allege that he informed his trial counsel of Barton's potential testimony; Arnett has similarly presented no facts supporting the conclusion that his trial counsel was remiss in failing to independently discover that Barton might have relevant testimony to offer. Arnett's failure to account for his trial counsel's failure to call these witnesses leaves the presumption of competence unrebutted. See Steffensen v. State, 837 P.2d 1123, 1126 (Alaska App.1992); Parker v. State, 779 P.2d 1245, 1248 (Alaska App.1989); Jones, 759 P.2d at 569.

▮ Arnett next brings up M.A.'s sexually transmitted diseases. At trial Arnett disclosed that M.A. had been found to have herpes and genital warts, both sexually transmitted diseases; Arnett pointed out that he suffered from neither condition. Relying on the assumption that he would have been infected had he engaged in sexual penetration with M.A., Arnett sought to have evidence of M.A.'s infection admitted. Judge Woodward stated that she would allow the evidence in if the defense presented foundational evidence establishing the likelihood of transmission to Arnett through sexual contact with M.A. Arnett's counsel made no further mention of the issue at trial.

Arnett argues that, "[s]o far as it appears, [trial counsel] did not pursue this any further. . . . This should have been before the jury." However, at her deposition, trial counsel identified a clear tactical basis for failing to pursue the issue: upon making inquiry, she had learned that M.A.'s diseases would not necessarily have been transmitted to Arnett through the alleged acts of sexual abuse.[3] Trial counsel's explanation stands unrefuted, and there is nothing to suggest that her tactical decision to drop the issue was unreasonable. Arnett has failed to rebut the presumption of competence on this issue.

Arnett also claims that his trial counsel was ineffective in neglecting to use certain telephone records to impeach M.A.'s version of events. Before trial, Arnett obtained the telephone records of M.A.'s boyfriend, James Elder. He argues that these "records would show that [M.A.] was in consistent contact with [Elder] so as to be able to cook up a story against Arnett." At the deposition, however, trial counsel acknowledged the relevance of the telephone records but asserted that "in fact, we did use them." Arnett questions the accuracy of this testimony; but he seems to assume that his counsel's reference to "use" of the records necessarily

---

**2.** In fact, it appears Barton did not know why Arnett obtained the vasectomy: Barton's affidavit indicates her awareness that Arnett was considering having his vasectomy reversed, but not that she knew why he obtained the vasectomy in the first place.

**3.** Specifically, trial counsel testified:
 I made an appointment with a Mr. Kirkpatrick, who is a physician's assistant in Wasilla. That was by agreement with Gene Arnett. It was agreed that I would look into that issue, and I met with this physician's assistant and presented in general the fact circumstances that I had: that I had a person who was accused of having sexual relations with a person who appeared to have both herpes and genital warts, and he indicated to me that it was not necessarily evidentiary that there was no sexual contact if the person hadn't acquired those diseases, because you didn't acquire those diseases each and every time you had sexual contact with somebody that had those diseases.

means that the records were admitted. The assumption is unwarranted.

During her cross-examination of Elder, Arnett's trial counsel questioned Elder as to his contact with M.A. after M.A. went to the police. Elder admitted talking to M.A. by telephone frequently about the case. In response to a question that was apparently based on trial counsel's review of the telephone records, Elder indicated that he would not be surprised to learn "that 39 calls have been placed from [M.A.'s] phone number to your phone number since she went to the police[.]" The record supports trial counsel's testimony that she was aware of and made effective use of the telephone records.[4]

 Arnett lastly complains of his trial counsel's failure to present evidence indicating that M.A. continued to live at home after 1985. M.A. testified that the last time she lived with her parents was in September of 1985. Arnett argues that his trial counsel should have impeached M.A. with the testimony of his son, William Arnett. After his conviction, Arnett obtained an affidavit from William, who did not live with Arnett but occasionally visited. William claimed in his affidavit that he twice visited Arnett for periods of several weeks after 1985 and that M.A. "was around every day."

However, when Arnett questioned his trial counsel at her deposition about her failure to call William Arnett, counsel replied, "I don't know who that is. I don't recall ever hearing that name before." Arnett makes no claim that he informed his counsel prior to trial that William might have relevant testimony to offer; nor does Arnett advance any facts indicating that trial counsel should have learned on her own about William's potential usefulness. Again, Arnett has failed to put forth evidence establishing that he received ineffective assistance of counsel. *Steffensen,* 837 P.2d at 1126.

 We thus conclude that the superior court properly rejected Arnett's arguments

that his counsel was ineffective in the manner in which she handled Arnett's trial. Arnett's second major claim is that his counsel acted incompetently by encouraging him to abscond from trial and by assisting him in actually absconding. Arnett contends that this attorney "masterminded" his mid-trial departure from the state:

> On the Wednesday of the second week [of trial], it was before I was to take the stand, [my trial counsel] told me, says, you need to do this now. You need to leave now. Says, if you do, the—they will take the trial and it would just stop. And all of the evidence that you do have in, it will stay.
>
> . . . .
>
> She told me that I would get—that I would have more time to get evidence and plus, since I was looking at life anyway, what was a couple more years in jail?

In response to Arnett's efforts to question her at the deposition about her role in her client's mid-trial departure, Arnett's trial counsel invoked the privilege against self-incrimination and declined to answer. Judge Woodward nevertheless rejected Arnett's claim, concluding that even if Arnett had been advised to leave the state and was assisted in leaving, he could not avail himself of an ineffective assistance of counsel claim:

> The court finds that a competent, intelligent defendant may not wilfully and knowingly commit a criminal act and then seek to escape the consequences of his own wrongdoing by shifting the blame for his conduct onto his counsel and/or alleging that she failed to advise him precisely what would happen to his case as a result of his illegal behavior.

We agree with Judge Woodward's conclusion. We note, initially, that the record fully supports Judge Woodward's finding that Arnett was a "competent" and "intelligent" defendant and that his decision to abscond was wilful and knowing. Arnett makes no claim of ignorance as to the unlawfulness of his

---

4. Arnett also mentions the records of John Rockwell. However, Arnett did not question his trial counsel about Rockwell's phone records. Arnett also argues that his own telephone records were relevant and should have been used. However, his trial counsel testified that she was aware of

and had secured copies of those records, but that they proved irrelevant after the state successfully amended the dates of the offenses alleged in Arnett's indictment. The record contains no evidence to refute this explanation.

conduct and no assertion that he was importuned by his attorney or entrapped by her into absconding.[5] In these unique circumstances, we think it proper to bar Arnett's attempt to take advantage of his attorney's purported incompetence.

Relevant case law, though limited, strongly supports this conclusion: ineffective assistance of counsel claims have been uniformly rejected in cases involving active attorney-client collusion. *See, e.g., Harding v. Lewis,* 834 F.2d 853, 859 (9th Cir.1987) (rejecting ineffective assistance of counsel claim based on involuntary self-representation when defendant, in an attempt to inject reversible error into the trial through self-representation, conspired with counsel to invent an excuse for discharging counsel in the midst of trial); *DeHaven v. State,* 618 So.2d 337, 339 (Fla.App.1993) (rejecting ineffective assistance of counsel claim based on attorney's knowing use, with defendant's approval, of perjured defense testimony); *Kelley v. State,* 644 S.W.2d 571, 574 (Tex.App.1982) (rejecting ineffective assistance of counsel claim involving defense counsel's "reprehensible" attempt, acquiesced in by defendant, to dispose of evidence); *cf. United States v. Boone,* 62 F.3d 323 (10th Cir.1995) (finding suborning perjury to be below "objective standard of reasonableness" but upholding conviction for lack of prejudice). The common thread of reasoning in these cases is persuasive: that defendants should not be rewarded for their own misconduct.

We have no doubt that a lawyer who counsels a client to commit a crime for tactical gain acts incompetently. But by the same token, this form of advice falls so far beyond the pale of anything that could conceivably be considered legitimate legal assistance that a defendant's voluntary reliance on it is tantamount to a willing abandonment of competent representation. A defendant who voluntarily commits a crime on advice of counsel ought not to be allowed to impute blame to the attorney or to claim prejudice stemming from the attorney's incompetence; for in almost all such cases, the defendant's own voluntary acts will be a superseding cause of any resulting misfortune. *Cf. Napageak v. State,* 729 P.2d 893 (Alaska App.1986) (defendant's assault on an officer was not the fruit of the officer's wrongful entry); *see generally* Restatement (Second) of Torts § 886A(3) (1977) (there is no right of contribution in favor of joint tortfeasors for intentionally caused harms).

We by no means suggest a belief that Arnett's trial counsel advised him to abscond. The point was left unresolved by the superior court, which simply assumed, for purposes of its decision, that Arnett's assertions were true. We, too, assume without deciding the truth of Arnett's claims. And we conclude that, even if Arnett's counsel advised him to abscond from trial and assisted him in doing so, Arnett has shown no grounds for claiming prejudice stemming from his attorney's incompetence.

To grant relief in this case would permit Arnett "to reap a windfall new trial on account of his own [crime]." *DeHaven,* 618 So.2d at 339 (quoting *Commonwealth v. McNeil,* 506 Pa. 607, 487 A.2d 802, 807 (1985)). "We cannot allow this tempting gambit for counsel and client." *Harding,* 834 F.2d at 859. In the circumstances alleged by Arnett, Arnett must remain responsible for his own misconduct.

The superior court's order dismissing Arnett's application for post-conviction relief is AFFIRMED.

---

**5.** To the contrary, Arnett insists that his claim of ineffective assistance relies, not on any prejudicial consequences stemming from his trial attorney's illegal advice and actions, but rather on the mere illegality of counsel's conduct itself: "Arnett's contentions are not that he acted on the advice of counsel, but that his counsel was an accessory."