IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 33431-7-III |
| Respondent, | ) | (consolidated with |
| | ) | No. 33055-9-III) |
| v. | ) | |
| MIGUEL BARAJAS-VERDUZCO, | ) | UNPUBLISHED OPINION |
| Appellant. | ) | |

| | |
|---|---|
| IN THE MATTER OF PERSONAL RESTRAINT OF | ) |
| MIGUEL BARAJAS-VERDUZCO, | ) |
| Petitioner. | ) |

FEARING, C.J. — This appeal raises a unique issue in the context of *Padilla v. Kentucky* cases. Miguel Barajas-Verduzco's trial attorney accurately warned Barajas-Verduzco that his guilty plea would lead to deportation, but the attorney also recommended that Barajas-Verduzco unlawfully return to the United States after deportation and the attorney stated he would assist Barajas-Verduzco in gaining lawful residency. When the attorney failed to assist Barajas-Verduzco, upon the latter's return to the United States, Barajas-Verduzco filed this personal restraint petition and appeal, by

which he seeks to vacate, on the ground of ineffective assistance of counsel, his 2003 guilty plea on charges of possession of cocaine with intent to deliver, possession of marijuana with intent to deliver, possession of stolen property in the first degree, and alien in possession of a firearm. We reject Barajas-Verduzco's appeal and deny his personal restraint petition because Barajas-Verduzco's unclean hands in engaging in illegal conduct prevent his raising his claim of ineffective assistance of counsel.

## FACTS

Miguel Barajas-Verduzco, presumably without permission, entered the United States in 1998. In 2003, he commenced a relationship with Maria Manzo.

On December 30, 2003, Miguel Barajas-Verduzco pled guilty to charges of possession of cocaine with intent to deliver, possession of marijuana with intent to deliver, possession of stolen property in the first degree, and alien in possession of a firearm. Attorney Theodore Mahr then represented Barajas-Verduzco.

In a 2012 affidavit, Miguel Barajas-Verduzco declared that, before the 2003 plea, he asked attorney Theodore Mahr if he should fight the charges so he could stay in the United States. Theodore Mahr advised him that Mahr had arranged the best possible plea agreement. According to Barajas-Verduzco, Mahr warned Barajas-Verduzco that authorities would deport him after his release from state prison, but he should hire a Mexican coyote to assist in a return to the United States. Mahr further claimed to be an

2

immigration attorney and that, once Barajas-Verduzco returned to Washington, Mahr could "help [Barajas-Verduzco] with [his] immigration case." Clerk's Papers (CP) at 32. Theodore Mahr did not inform Barajas-Verduzco that, if he pled guilty to a drug crime, he would forever lose his rights to be in the United States. Barajas-Verduzco deemed himself fortunate to garner an attorney with both criminal and immigration law expertise.

According to his 2012 affidavit, Miguel Barajas-Verduzco trusted the recommendations of Theodore Mahr. If he knew that a guilty plea would cause his banishment from the United States for life, he would not have pled guilty. He would have hired a better lawyer.

At the December 30, 2003 plea hearing, the State's attorney declared, within Miguel Barajas-Verduzco's hearing: "he's pleading guilty as charged. He is looking at deportation upon conviction." CP at 47. The prosecution also mentioned a companion case against Maria Manzo, wherein the State agreed to offer Barajas-Verduzco's companion a jail sentence of time already served in exchange for a guilty plea of conspiracy to deliver cocaine. Near the close of the December 30 plea hearing, the trial court asked Barajas-Verduzco:

> Do you understand that if you're not a citizen, a plea to this charge would make it almost impossible to become a citizen?
> [BARAJAS-VERDUZCO]: Yes.

CP at 51. Barajas-Verduzco signed a statement on plea of guilty that read in part:

3

If I am not a citizen of the United states, a plea of guilty to an offense punishable as a crime under state law is grounds for deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States.

CP at 7. Neither the court nor Theodore Mahr advised Barajas-Verduzco of his right to appeal his sentence.

After Miguel Barajas-Verduzco served his Washington State sentence, the United States government at some unknown time deported him to Mexico. Within months of deportation, Barajas-Verduzco illegally reentered the United States and has remained in this country since. Barajas-Verduzco does not disclose the details of his reentry and does not mention whether he hired a coyote. He characterizes his return as harrowing.

In his 2012 affidavit, Miguel Barajas-Verduzco avers that he telephoned Theodore Mahr on his reentry into the United States. Mahr remembered Barajas-Verduzco. Mahr recommended that Barajas-Verduzco delay seeking permission to stay in the United States because Mahr predicted the United States government would soon grant amnesty to illegal residents. Barajas-Verduzco waited.

In his 2012 affidavit, Miguel Barajas-Verduzco relates other comments made by Theodore Mahr presumably during the same telephone conversation, although the comments may conflict with Barajas-Verduzco's claim that Mahr told him to delay and that Barajas-Verduzco waited. According to Barajas-Verduzco, Mahr stated he still

assisted clients with immigration issues and that, if Barajas-Verduzco paid him $1,500, Mahr would research the law to determine a way that Mahr could gain residency status. Barajas-Verduzco could then apply for residency. When the United States Immigration and Custom Enforcement agency arrested Barajas-Verduzco, he had begun collecting money to remunerate Theodore Mahr for his services.

At some unknown time, the United States Immigration and Customs Enforcement agency captured Miguel Barajas-Verduzco. By 2014, the agency held Barajas-Verduzco in Tacoma.

## PROCEDURE

On November 16, 2012, Miguel Barajas-Verduzco filed with the superior court an affidavit that the court considered as a motion to vacate his guilty plea and judgment. In support of Barajas-Verduzco's motion, immigration attorney Andrew White signed a declaration averring that Barajas-Verduzco's conviction for possession of cocaine with intent to deliver, possession of marijuana with intent to deliver, and possession of stolen property in the first degree prevented Barajas-Verduzco from the possibility of stopping his removal from the United States. With the convictions and despite his unlawful presence here, Barajas-Verduzco may have successfully prevented removal, if detained, because of his length of residency and his children being United States citizens. According to White, Theodore Mahr should have informed Barajas-Verduzco of these

5

consequences from his 2003 guilty plea.

On January 9, 2015, the superior court entered an order transferring the motion to

vacate the judgment of conviction to this court as a personal restraint petition. In the

transfer order, the superior court wrote:

> Based upon the affidavits of the defendant filed November 6, 2012
> and March 3, 2014, the court finds that defense counsel at the time of
> defendant's plea did not provide any affirmative misadvice to the defendant
> regarding the immigration consequences of his plea.
> . . . The defendant has not made a substantial showing of
> entitlement to relief.

Br. of Resp't at App. B.

On May 22, 2015, Miguel Barajas-Verduzco filed a notice of appeal of his

December 30, 2003, guilty plea. Our court commissioner adjudged the notice of appeal

to be timely since the trial court did not advise him of his right to appeal the judgment

and sentence at the time of his December 2003 guilty plea. This court consolidated the

personal restraint petition with the appeal.

In a statement of additional grounds (SAG), Miguel Barajas-Verduzco declares:

> I want the court to know that Ted Mahr my lawyer in this case lied
> to me so that I would take a deal. Mr. Mahr said that it didn't matter if I
> said that I was guilty for this case, that he could still get me a green card.
> He said that I would get deported by immigration only because I didn't
> have a permission. If I could just return, then he said he would file special
> papers that would give me a green card.

6

SAG at 1. This court lacks any testimony from Ted Mahr concerning legal advice given to Barajas-Verduzco.

## LAW AND ANALYSIS

### Personal Restraint Petition and Appeal

In both his personal restraint petition and his direct appeal, Miguel Barajas-Verduzco argues that he received ineffective assistance of counsel because Theodore Mahr misadvised him of clear immigration consequences of his guilty plea. Therefore, according to Barajas-Verduzco, *Padilla v. Kentucky*, 559 U.S. 356, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010) compels vacation of his plea. The State responds that Mahr's performance may have been deficient, but the deficiency did not prejudice Barajas-Verduzco because the State possessed overwhelming evidence of guilt against Barajas-Verduzco such that Barajas-Verduzco would have accepted the plea anyway.

Because we review Miguel Barajas-Verduzco's personal restraint petition, we may consider affidavits filed by Barajas-Verduzco in support of his motion to vacate. *In re Personal Restraint of Ramos*, 181 Wn. App. 743, 749, 326 P.3d 826 (2014), *review granted*, 181 Wn.2d 1029, 340 P.3d 229 (2015). Because we also review this case on direct appeal, Barajas-Verduzco receives the benefit of the changes in law since his 2003 plea. *In re Personal Restraint of Ramos*, 181 Wn. App. at 749. Anyway, our state high court has held that *Padilla v. Kentucky* did not announce a new rule as applied in

7

Washington and therefore the benefits of *Padilla* apply retroactively to defendants in collateral review. *In re Personal Restraint of Young-Cheng Tsai*, 183 Wn.2d 91, 103, 351 P.3d 138 (2015).

## Misadvice of Attorney

Washington's CrR 4.2(f) addresses a withdrawal of a guilty plea. The rule reads:

> **Withdrawal of Plea.** The court shall allow a defendant to withdraw the defendant's plea of guilty whenever it appears that the withdrawal is necessary to correct a manifest injustice.

CrR 7.8(c)(2) allows transfer of the motion to withdraw a guilty plea or vacation of judgment to this court.

A strong public interest encourages the enforcement of a plea agreement when an accused voluntarily and intelligently enters the plea. *In re Detention of Scott*, 150 Wn. App. 414, 426, 208 P.3d 1211 (2009). Nevertheless, the court may allow a defendant to withdraw his guilty plea when the withdrawal is necessary to correct a manifest injustice. *In re Detention of Scott*, 150 Wn. App. at 426. The defendant bears the burden of proving manifest injustice, defined as "obvious, directly observable, overt, not obscure." *In re Detention of Scott*, 150 Wn. App. at 426-27 (quoting *State v. Ross*, 129 Wn.2d 279, 283-84, 916 P.2d 405 (1996)) (internal quotation marks omitted). For purposes of CrR 4.2(f), a manifest injustice exists under four per se nonexclusive instances: (1) the defendant did not ratify the plea, (2) the plea was not voluntary, (3) the defendant

8

received ineffective assistance of counsel, or (4) the plea agreement was not kept. *State v. Wakefield,* 130 Wn.2d 464, 472, 925 P.2d 183 (1996); *State v. Wilson,* 162 Wn. App. 409, 414-15, 253 P.3d 1143 (2011). Miguel Barajas-Verduzco relies only on ineffective assistance of counsel.

To establish ineffective assistance of counsel, a defendant must satisfy a two part test (1) that his or her counsel's assistance was objectively unreasonable and (2) that as a result of counsel's deficient assistance, he or she suffered prejudice. *Strickland v. Washington,* 466 U.S. 668, 690-91, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). To demonstrate the first prong, deficient performance, a reviewing court judges the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. *Strickland,* 466 U.S. at 690. The appellate court will presume counsel was effective. *State v. Gomez Cervantes,* 169 Wn. App. 428, 434, 282 P.3d 98 (2012).

The Sixth Amendment right to effective assistance of counsel encompasses the plea process. *McMann v. Richardson,* 397 U.S. 759, 771, 90 S. Ct. 1441, 25 L. Ed. 2d 763 (1970); *State v. Sandoval,* 171 Wn.2d 163, 169, 249 P.3d 1015 (2011). Faulty advice of counsel may render the defendant's guilty plea involuntary or unintelligent. *Hill v. Lockhart,* 474 U.S. 52, 56, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985); *State v. Sandoval,* 171 Wn.2d at 169. To establish that the plea was involuntary or unintelligent due to

9

counsel's inadequate advice, the defendant must show under the test in *Strickland* that his attorney's performance was objectively unreasonable and that he was prejudiced by the deficiency. *Sandoval*, 171 Wn.2d at 169.

Prior to *Padilla v. Kentucky,* 559 U.S. 356 (2010), Washington law considered deportation a collateral consequence of a conviction and anything short of an affirmative misrepresentation by counsel of the plea's deportation consequences could not support a plea withdrawal. *State v. Sandoval*, 171 Wn.2d at 170 n.1; *In re Personal Restraint of Yim*, 139 Wn.2d 581, 587-89, 989 P.2d 512 (1999). *Padilla* explicitly rejected the proposition that only affirmative misadvice about deportation consequences of the plea, and not failure to give such advice, could constitute ineffective assistance of counsel. *Padilla* also emphasized that for at least the past fifteen years, professional norms imposed an obligation on counsel to provide advice on the deportation consequences of a client's plea.

Dicta in *Padilla* suggests that its holding also applies to undocumented noncitizens who would become ineligible to apply for relief.

> [W]e have recognized that "preserving the possibility of" discretionary relief from deportation . . . "would have been one of the principal benefits sought by defendants deciding whether to accept a plea offer or instead to proceed to trial."

*Padilla*, 559 U.S. at 368 (quoting *I.N.S. v. St. Cyr*, 533 U.S. 289, 323, 121 S. Ct. 2271,

10

150 L. Ed. 2d 347 (2001)). This court applied a full *Padilla* analysis when an undocumented defendant argued that counsel failed to advise him that his offense constituted a commission of a crime involving moral turpitude, which automatically made him ineligible to remain in the United States. *In re Personal Restraint of Ramos*, 181 Wn. App. at 754.

According to Miguel Barajas-Verduzco, his counsel, Theodore Mahr, told him he would be deported, but added that Barajas-Verduzco should return, at which time Mahr would attempt to assist him with immigration issues. We recognize that Mahr did not expressly promise that his assistance would keep Barajas-Verduzco in the United States, but Mahr's comments implied that his services could succeed. Thus, under Barajas-Verduzco's testimony, Mahr supplied erroneous legal guidance.

The concurrence writes that Theodore Mahr advised Miguel Barajas-Verduzco that authorities would deport Barajas-Verduzco and that Barajas-Verduzco would thereafter be unable to return to the United States. To the contrary, Barajas-Verduzco avers that Mahr never informed him of an inability to ever return to this country. The signed plea of guilty came close to informing Barajas-Verduzco of forever forfeiting the opportunity to return to the United States. The plea form warned Barajas-Verduzco that a plea of guilty "is grounds for . . . exclusion from admission to the United States." CP at

11

7. Nevertheless, the language does not explicitly state that Barajas-Verduzco will be forever excluded and the alleged misstatements of Theodore Mahr suggested otherwise.

The concurrence also suggests that Theodore Mahr's advice addressed only a postsentencing time period and therefore provided no assistance to Miguel Barajas-Verduzco as to whether to plead guilty. Barajas-Verduzco's testimony, if true, establishes otherwise. According to Barajas-Verduzco, he pled guilty on the expectation, if not promise, that postsentence he could surreptitiously return to the United States and Mahr would assist in procuring him legal status. Under Barajas-Verduzco's facts, the advice procured his guilty plea.

We recognize that no finder of fact has adjudged whether Miguel Barajas-Verduzco's speaks the truth when testifying to advice rendered by Theodore Mahr. If we otherwise remanded the case to the trial court, we would direct the court to determine the full extent of the advice rendered by Mahr. Because of Barajas-Verduzco's unclean hands, we conclude that no remand is necessary.

## Unclean Hands

Miguel Barajas-Verduzco's appeal and personal restraint petition contain unique elements not found in other reported decisions. According to Barajas-Verduzco, Theodore Mahr advised him he would be deported. This advice was correct. The advice of lawyers in other decisions generally stopped with the immediate consequences of the

12

client's guilty plea. Mahr's advice continued. Mahr recommended to Barajas-Verduzco that, upon Barajas-Verduzco's deportation, he secure a coyote and recross the United States border. Thus, Mahr not only offered accurate guidance as to the consequences of past criminal conduct, Mahr recommended future action.

Under federal law, anyone who enters the United States illegally commits a misdemeanor. 8 U.S.C. § 1325. Entering the United States after being deported constitutes a felony. 8 U.S.C. § 1326. Thus, Theodore Mahr advised Miguel Barajas-Verduzco to perpetrate a felony. Barajas-Verduzco knew he would commit a crime by returning to the United States. He was being been removed from the country because of his proscribed presence. He thereafter underwent an arduous trip because of the conduct's unlawfulness. If he considered his recrossing lawful, he could have presented himself to the border patrol like others legally crossing from Mexico to the United States.

Miguel Barajas-Verduzco now seeks to vacate a guilty plea by claiming he received misadvice when the advice endorsed illegal behavior. Barajas-Verduzco seeks to benefit from his criminal misconduct. Barajas-Verduzco tells this court that, because he followed his attorney's recommendation and committed a crime and because things did not turn out as hoped or planned, he should receive relief. Therefore we harness the unclean hands doctrine and deny Barajas-Verduzco relief.

A famous rule in equity is that one must come to court with clean hands. *Income*

13

*Investors, Inc. v. Shelton*, 3 Wn.2d 599, 602, 101 P.2d 973 (1940); *Burt v. Department of Corrections*, 191 Wn. App. 194, 210, 361 P.3d 283 (2015); *Pierce County v. State*, 144 Wn. App. 783, 832, 185 P.3d 594 (2008). Under the equitable doctrine of clean hands, a complainant will not be permitted to take advantage of his or her own wrong. *Middleton v. Lockhart*, 344 Ark. 572, 583, 43 S.W.3d 113 (2001); *Thomson Learning, Inc. v. Olympia Properties, LLC*, 365 Ill. App. 3d 621, 850 N.E.2d 314, 302 Ill. Dec. 877 (2006); *Opperman v. M. & I. Dehy, Inc.*, 644 N.W.2d 1 (Iowa 2002). The principle underlying the maxim is that equity will not aid an applicant in securing or protecting gains from wrongdoing or in escaping its consequences. *Opperman v. M. & I. Dehy, Inc.*, 644 N.W.2d 1 (Iowa 2002).

No Washington or United States Supreme Court decision addresses whether the doctrine of clean hands may preclude a criminal defendant from arguing ineffective assistance of counsel. We also find no cases, from other jurisdictions, that expressly apply the doctrine under such circumstances. Nevertheless, some courts have refused to hear an ineffective assistance of counsel argument based on the defendant's engaging in illegal conduct at the advice of his or her attorney. *Harding v. Lewis*, 834 F.2d 853 (9th Cir. 1987); *State v. Peoples*, 446 N.J. Super. 245, 141 A.3d 350 (2016); *Arnett v. State*, 938 P.2d 1079 (Alaska Ct. App. 1997); *DeHaven v. State*, 618 So. 2d 337 (Fla. Dist. Ct. App. 1993); *Kelley v. State*, 644 S.W.2d 571 (Tex. App. 1982). In essence, the courts

14

applied the unclean hands rule.

In *State v. Peoples*, the New Jersey court rejected the defendant's claim of ineffective assistance of counsel because the defendant asserted that his attorney advised him to tamper with a witness. Consistent with the doctrine of unclean hands, the reviewing court would not tolerate a fraud on the court. The court wrote:

> we hold that a defendant who participates in illegal conduct in collusion with his attorney or acquiesces in the attorney's illegal or unethical conduct is not entitled [ineffective assistance of counsel] relief. We will not tolerate what amounts to a fraud on the court, and will not permit a defendant who participates or acquiesces in his attorney's illegal or unethical conduct to reap any benefit of [ineffective assistance of counsel] relief.

141 A.3d at 358.

In *Arnett v. State*, defendant claimed his attorney encouraged him and assisted him in absconding during trial since a conviction could lead to life imprisonment. The Alaska court did not decide the accuracy of the defendant's factual assertions, but rejected the argument for other reasons. The court wrote:

> We have no doubt that a lawyer who counsels a client to commit a crime for tactical gain acts incompetently. But by the same token, this form of advice falls so far beyond the pale of anything that could conceivably be considered legitimate legal assistance that a defendant's voluntary reliance on it is tantamount to a willing abandonment of competent representation. A defendant who voluntarily commits a crime on advice of counsel ought not to be allowed to impute blame to the attorney or to claim prejudice stemming from the attorney's incompetence; for in almost all such cases, the defendant's own voluntary acts will be a superseding cause of any resulting misfortune.

15

938 P.2d at 1083.

### Prejudice

The second prong of ineffective assistance of counsel is prejudice resulting from the misadvice. Because we deny Miguel Barajas-Verduzco relief on the basis of unclean hands, we need not address whether Barajas-Verduzco meets this prong.

### STATEMENT OF ADDITIONAL GROUNDS

A criminal defendant can submit a pro se statement of additional grounds for review "to identify and discuss those matters related to the decision under review *that* the defendant believes have not been adequately addressed by the brief filed by the defendant's counsel." RAP 10.10(a). The rule additionally provides in part:

> Only documents *that* are contained in the record on review should be attached or referred to in the statement.

RAP 10.10(c); *see also State v. Alvarado*, 164 Wn.2d 556, 569, 192 P.3d 345 (2008).

Miguel Barajas-Verduzco filed a statement of additional grounds, by which he seeks to add facts to the record. He forwards no new arguments. Therefore, we disregard his statement of additional grounds.

### CONCLUSION

We deny Miguel Barajas-Verduzco's motion to vacate his guilty plea. We reject his appeal and deny his personal restraint petition.

16

No. 33431-7-III cons. with No. 33055-9-III
*State v. Barajas-Verduzco*; *Pers. Restraint of Barajas-Verduzco*

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

Fearing, C.J.

I CONCUR:

Lawrence-Berrey, J.

17

No. 33431-7-III (consol. with No. 33055-9-III)

KORSMO, J. — (concurring in result) — Although I agree with the result of the majority opinion, there are additional reasons for rejecting the argument Mr. Barajas-Verduzco raises. First, there was no *manifest* reason to withdraw the guilty plea and defendant's lies to the court are neither manifest error nor should they now be a basis for attacking his plea. Second, it is absolutely inequitable to enter into a criminal conspiracy with defense counsel—which is what Mr. Barajas-Verduzco in essence alleges here—and then profit from the further criminality. Although the majority opinion gets to that last point, it should be emphasized that the case law universally and unconditionally supports that outcome.

*Pleading Guilty*

In most cases raising claims under *Padilla v. Kentucky*, 559 U.S. 356, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010), the issue is whether or not defense counsel gave correct advice concerning the immigration consequences of pleading guilty. Here, defense counsel correctly told Mr. Barajas-Verduzco that he would be deported and unable to

return to the country. That should be the end of this case. Having been given correct advice, appellant has no viable claim under *Padilla*. His claim also fails under the standards governing ineffective assistance claims in this context.

In most cases raising ineffective assistance in the guilty plea context, the questions presented is whether the attorney "actually and substantially assisted his client in deciding whether to plead guilty." *State v. Cameron*, 30 Wn. App. 229, 232, 633 P.2d 901, *review denied*, 96 Wn.2d 1023 (1981). Failure to assist would amount to a violation of the first prong of *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). *In re Pers. Restraint of Peters*, 50 Wn. App. 702, 703-704, 750 P.2d 643 (1988). When a defendant is able to show that defense counsel's behavior was defective, he would still have to show resulting prejudice. In the context of a guilty plea, this means that the defendant must show he would not have entered the guilty plea but for his counsel's ineffectiveness. *Id.* at 708.

The law governing "typical" guilty plea challenges is also well settled. CrR 4.2(f) permits a guilty plea to be withdrawn whenever "necessary to correct a manifest injustice." The appropriate standard for applying this rule was set out in *State v. Taylor*, 83 Wn.2d 594, 596, 521 P.2d 699 (1974), as follows:

> Under CrR 4.2(f), adopted by this court, the trial court shall allow a defendant to withdraw his plea of guilty whenever it appears that withdrawal is (1) *necessary* to correct a (2) *manifest injustice, i.e.*, an injustice that is obvious, directly observable, overt, not obscure. *Webster's*

*Third New International Dictionary* (1966). Without question, this imposes upon the defendant a demanding standard.

The written statement form itself is sufficient to establish that the plea was voluntary. *State v. Lujan*, 38 Wn. App. 735, 688 P.2d 548 (1984), *review denied*, 103 Wn.2d 1014 (1985). Here, Mr. Barajas-Verduzco has failed both to show that his counsel erred in assisting him with pleading guilty and in showing that there was a *manifest injustice* that makes withdrawing his guilty plea *necessary*.

As to the assistance of counsel issue, Mr. Barajas-Verduzco has not shown that his counsel erred concerning the decision to plead guilty. The allegations made against counsel go to potential behavior after the sentence has been served and are not related to the matter of assisting in whether or not to accept the plea offer. There being no allegation of error in making the plea bargain decision, there is no basis for finding counsel ineffective.

But, even if the allegations were something relevant to this case, they fail to satisfy the standards for withdrawing a guilty plea. As noted in *Lujan*, the written plea statement form is sufficient to establish the voluntariness of that plea. In both the plea statement form and in the trial colloquy, Mr. Barajas-Verduzco asserted that there were no other promises made to him that had not been disclosed to the trial court. As a matter of law,

3

he does not now get to claim that there were material, undisclosed promises by his attorney.[1] That basis is sufficient reason by itself for not entertaining his claim here.

Because the current assertions are both irrelevant to his guilty plea and contrary to his previous statements to the trial court, Mr. Barajas-Verduzco has failed to establish any error occurred at the plea hearing.

*"Unclean Hands"*

The majority opinion recognizes that the critical issue is whether a petitioner can profit from his own illegal behavior. Whether we entitle it "clean hands doctrine" by name or not, we have a duty not to perpetrate fraud. Courts that have looked at analogous behavior by counsel have had no trouble rejecting claims that, in effect, allow a defendant to benefit from his own unlawful conduct. As a matter of law, the claim Mr. Barajas-Verduzco has stated is not one that this court, or any other court, should tolerate.

The view that a defendant should not profit from his illegal conduct, let alone assert those actions as a basis for finding counsel ineffective, appears to be the general, and perhaps universal, view. The matter was nicely stated last year by the appellate

---

[1] In addition, judicial estoppel should prevent Mr. Barajas-Verduzco from asserting a contrary position in this proceeding. *See, e.g., Cunningham v. Reliable Concrete Pumping, Inc.*, 126 Wn. App. 222, 224-225, 108 P.3d 147 (2005). "The purpose of judicial estoppel is to bar as evidence statements and declarations by a party which would be contrary to sworn testimony the party has given in the same or prior judicial proceedings." *King v. Clodfelter*, 10 Wn. App. 514, 519, 518 P.2d 206 (1974). A second purpose of the doctrine is to "preserve respect for judicial proceedings." *Arkison v. Ethan Allen, Inc.*, 160 Wn.2d 535, 538, 160 P.3d 13 (2007) (internal quotation marks omitted).

division of the New Jersey Superior Court, rejecting a claim that defense counsel was ineffective for directing the defendant to tamper with witnesses, advice that the client followed. *State v. Peoples*, 446 N.J. Super. 245, 141 A.3d 350, 357 (2016). The majority opinion recites the critical holding, so I need not do so here. *Id.* at 358.

One of the cases the New Jersey court relied on is the case that the majority opinion primarily emphasizes. I agree with that approach, but would note a bit more from that opinion, *Arnett v. State*, 938 P.2d 1079 (Alaska Ct. App. 1997). Although the majority cites a nice passage from that opinion, *Arnett* says more that should also be recited here. There defense counsel allegedly had told the defendant to abscond during trial since he was looking at life in prison if convicted. *Id.* at 1082. The court rejected the argument and stated the cases its research had uncovered:

> Relevant case law, though limited, strongly supports this conclusion: ineffective assistance of counsel claims have been uniformly rejected in cases involving active attorney-client collusion. *See, e.g., Harding v. Lewis*, 834 F.2d 853, 859 (9th Cir.1987) (rejecting ineffective assistance of counsel claim based on involuntary self-representation when defendant, in an attempt to inject reversible error into the trial through self-representation, conspired with counsel to invent an excuse for discharging counsel in the midst of trial); *DeHaven v. State*, 618 So.2d 337, 339 (Fla.App.1993) (rejecting ineffective assistance of counsel claim based on attorney's knowing use, with defendant's approval, of perjured defense testimony); *Kelley v. State*, 644 S.W.2d 571, 574 (Tex.App.1982) (rejecting ineffective assistance of counsel claim involving defense counsel's "reprehensible" attempt, acquiesced in by defendant, to dispose of evidence); *cf. United States v. Boone*, 62 F.3d 323 (10th Cir.1995) (finding suborning perjury to be below "objective standard of reasonableness" but upholding conviction for lack of prejudice). The common thread of

5

reasoning in these cases is persuasive: that defendants should not be rewarded for their own misconduct.

*Id.* at 1083.

The court then stated its holding:

We have no doubt that a lawyer who counsels a client to commit a crime for tactical gain acts incompetently. But by the same token, this form of advice falls so far beyond the pale of anything that could conceivably be considered legitimate legal assistance that a defendant's voluntary reliance on it is tantamount to a willing abandonment of competent representation. A defendant who voluntarily commits a crime on advice of counsel ought not to be allowed to impute blame to the attorney or to claim prejudice stemming from the attorney's incompetence; for in almost all such cases, the defendant's own voluntary acts will be a superseding cause of any resulting misfortune. *Cf. Napageak v. State*, 729 P.2d 893 (Alaska App.1986) (defendant's assault on an officer was not the fruit of the officer's wrongful entry); *see generally* Restatement (Second) of Torts § 886A(3) (1977) (there is no right of contribution in favor of joint tortfeasors for intentionally caused harms).

We by no means suggest a belief that Arnett's trial counsel advised him to abscond. The point was left unresolved by the superior court, which simply assumed, for purposes of its decision, that Arnett's assertions were true. We, too, assume without deciding the truth of Arnett's claims. And we conclude that, even if Arnett's counsel advised him to abscond from trial and assisted him in doing so, Arnett has shown no grounds for claiming prejudice stemming from his attorney's incompetence.

*Id.*

We are in the same position as the *Arnett* court. Even if we want to assume that Mahr gave the advice that Barajas-Verduzco claims he gave, we should simply and explicitly state the obvious—Barajas-Verduzco cannot profit from his own misbehavior and obtain relief by the expedient of having committed another crime. Courts routinely

6

follow that approach and reject claims of ineffective assistance when defendants allege that counsel had them lie at trial because otherwise the defendant would profit (obtain a new trial) from his own misbehavior (lying in court). *E.g.*, *DeHaven*, 618 So. 2d 337; *Commonwealth v. McNeil*, 506 Pa. 607, 487 A.2d 802 (1985); *Commonwealth v. Alderman*, 437 A.2d 36, 292 Pa. Super. 263 (1981).[2] Courts also reach that same result in other instances where attorneys allegedly advise clients to perform illegal acts. *E.g.*, *Peoples* (witness tampering); *Arnett* (absconding); *Kelley* (counsel's disposal of evidence attributed to client).

This case easily fits within the orbit of these others. When attorneys advise illegal or otherwise improper behavior, defendants cannot profit from following that advice. Whether we call it "unclean hands" or something else, we still should not countenance it. If the defendant came in and told the court that he lied when he said there were no other promises made to him in order to adduce his guilty plea, we would not grant relief. The fact that he now claims he lied on the basis of his attorney's advice does not make that position more tenable.

For the following reasons, some noted previously, we should be denying relief here: (1) there is no *Padilla* violation because defense counsel correctly advised his client he would be deported, (2) counsel performed effectively by assisting Mr. Barajas-

---

[2] These cases also reinforce a point discussed previously—having apparently lied at the time of his guilty plea, Mr. Barajas-Verduzco does not benefit from that fact now.

7

Verduzco in his decision whether or not to plead guilty, (3) Mr. Barajas-Verduzco's statements at his plea hearing denying that other promises were made preclude him from satisfying the standards for withdrawing his plea, (4) those statements should also estop him from now claiming the truth is other than what he told the court then, (5) it would perpetrate a fraud on the court to permit the defendant to benefit from his illegal activities, whether or not counsel aided him in those efforts. For all of these reasons, I concur in the result.

Korsmo, J.