NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-4965-13T1

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

EDWARD PEOPLES, a/k/a
RASHAWN WHITE, EDWARD D.
WHITE,

    Defendant-Appellant.

_____

> APPROVED FOR PUBLICATION
>
> **July 6, 2016**
>
> **APPELLATE DIVISION**

Submitted September 21, 2015 — Decided July 6, 2016

Before Judges Messano, Simonelli and Carroll.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Indictment No. 06-08-2643.

Joseph E. Krakora, Public Defender, attorney for appellant (William Welaj, Designated Counsel, on the brief).

Carolyn A. Murray, Acting Essex County Prosecutor, attorney for respondent (Sara A. Friedman, Special Deputy Attorney General/ Acting Assistant Prosecutor, of counsel and on the briefs).

Appellant filed a pro se supplemental brief.

The opinion of the Court was delivered by

SIMONELLI, J.A.D.

Defendant Edward Peoples appeals from the April 9, 2014 Law Division order, which denied his petition for post-conviction relief (PCR) without an evidentiary hearing. For the following reasons, we affirm.

I.

In August 2006, a grand jury indicted defendant for conspiracy to commit murder, N.J.S.A. 2C:5-2 and N.J.S.A. 2C:11-3(a)(1) (count one); first-degree murder, N.J.S.A. 2C:11-3(a)(1) and (2) (count two); first-degree attempted murder, N.J.S.A. 2C:11-3 (count three); second-degree aggravated assault, N.J.S.A. 2C:12-1(b)(1) (count four); third-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b) (count five); and second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a) (count six). The charges stemmed from the shooting death of Rahman Jenkins in the parking lot of the Baxter Terrace apartment complex in Newark. Defendant was represented by Paul W. Bergrin, who, after defendant's conviction and sentence, was suspended from the practice of law in this State, convicted of federal criminal offenses, and incarcerated in a federal prison for life.

Marquis Grimsley, defendant's girlfriend, Anyea Williams, and co-defendant Joseph Richardson had given statements to the police inculpating defendant in Jenkins's murder and were

witnesses for the State. In August 2007, the Essex County Prosecutor's Office (ECPO) began an investigation of alleged witness tampering in defendant's case. During the investigation, defendant's prison cellmate reported to the ECPO that defendant asked him to assist in preparing affidavits to send to witnesses saying that they lied, and provided information on witness intimidation tactics defendant was using. The cellmate also indicated that another inmate, Brandon Stokes, had agreed to be a defense witness in exchange for Bergrin representing him on his criminal appeal at a discounted fee even though Stokes was not present at the shooting and had no knowledge of Baxter Terrace.

Stokes was listed as a defense witness who defendant proffered would testify that defendant was not in possession of the gun and did not shoot Jenkins; however, Stokes told the ECPO that he was not present at and did not witness the shooting. Defendant concedes in his pro se supplemental merits brief that Stokes did not implicate Bergrin in any unethical or criminal conduct.

Another inmate, Gregory Smith, told the ECPO that defendant was coaching him to be a defense witness. Smith also gave the ECPO a map/diagram and prepared script that defendant gave him

to tailor his testimony. Smith did not implicate Bergrin in any unethical or criminal conduct.

Grimsley told the ECPO that defendant threatened him to change his testimony and sent him an affidavit that said he lied to the police. The ECPO also received a letter written by defendant that contained threats to Richardson. Neither Grimsley nor the letter implicated Bergrin in any unethical or criminal conduct.

Williams was under subpoena and expected to testify for the State that she saw defendant obtain a handgun just prior to the shooting and walk towards the parking lot area where Jenkins was killed and heard shots fired, following which defendant told her that he shot Jenkins. On September 25, 2007, she told the ECPO that defendant, his mother and his sister threatened her and told her not to appear in court. She later provided a letter she received from defendant, dated September 2, 2007, which stated as follows:

> I'm really about to come home I talked to Paul today everything lookin[g] alright, he said to make sure you come to court the first day of my trial but just don't come after that because if you don't come the first day they just [going to] try to postpone my trial[] but if you come they [are going to] think they got you and they [are going to] start trial and once they start they can[']t stop.

Relying solely on this letter, the State filed a motion to disqualify Bergrin based on a conflict of interest. The State argued that defendant advised Williams to evade the State's subpoena and not appear at trial at Bergrin's instruction, and thus, both defendant and Bergrin attempted to tamper with witnesses in violation of N.J.S.A. 2C:28-5(a)(2) and (4), and Bergrin violated Rule of Professional Conduct 1.2(d). The State submitted a certification from Williams in support of the motion, which confirmed her receipt of the letter from defendant and also stated that defendant threatened her with physical harm if she testified against him. Williams did not say she had any contact with Bergrin or that Bergrin had any direct or indirect involvement with the letter or threats.

Defendant was assigned special counsel to represent him on the motion. Bergrin filed opposition, but the record does not reveal that defendant filed opposition. However, the record reveals that defendant advised the court he wanted Bergrin to continue representing him. The judge denied the motion, finding there was no evidence of an organized plan that directly connected Bergrin to instructing defendant to tamper with Williams, and defendant wanted Bergrin to continue representing him. The judge determined that defendant knowingly attempted to induce Williams not to testify by instructing her not to appear,

thus denying the State evidence. Accordingly, the judge ruled the letter would be admissible at trial as evidence of defendant's guilt.

The evidence of defendant's guilt was overwhelming. In addition to Williams, at the trial, three eyewitnesses identified defendant as the shooter. On April 15, 2008, a jury found defendant guilty of murder (count two), attempted murder (count three), unlawful possession of a weapon (count five), and possession of a weapon for an unlawful purpose (count six), and not guilty of conspiracy to commit murder (count one). The State voluntarily dismissed count four charging defendant with aggravated assault.

At sentencing on August 5, 2008, the trial judge merged count six with count two and sentenced defendant to a sixty-five-year term of imprisonment with an eighty-five-percent period of parole ineligibility pursuant to the No Early Release Act, N.J.S.A. 2C:43-7.2. The judge also sentenced defendant to a concurrent twenty-year term of imprisonment with seventeen years of parole ineligibility on count three, a concurrent five-year term of imprisonment on count five, and imposed the appropriate assessments and penalties.

Nearly a year after defendant's conviction, on June 16, 2009, Bergrin was suspended from the practice of law in New

Jersey. See In re Bergrin, 199 N.J. 309 (2009). On November 10, 2009, a federal grand jury returned a superseding indictment charging Bergrin and several co-defendants with numerous offenses relating, in part, to the murder of an informant and witness tampering in a drug-trafficking case. See United States v. Bergrin, 650 F.3d 257 (3d Cir. 2011).

Defendant appealed his conviction and sentence. We affirmed, but remanded for a hearing on potential juror taint. State v. Peoples, No. A-5793-08 (App. Div. May 23, 2012) (slip op. at 16-17), certif. denied, 212 N.J. 462 (2012). In our opinion, we noted that defendant had tampered with Williams and other witnesses. Id. at 8-11. We declined to address defendant's ineffective assistance of counsel (IAC) argument that Bergrin had a conflict of interest because of the federal indictment. Id. at 14. Over two years after defendant's sentencing, Bergrin was convicted in federal court and sentenced to life imprisonment. See United States v. Bergrin, 599 F. App'x 439 (3d Cir. 2014), cert. denied, ___ U.S. ___, 135 S. Ct. 2370, 192 L. Ed. 2d 159 (2015).

Following a remand hearing in this matter, the trial judge found no juror taint had occurred. Defendant did not appeal. Instead, he filed a PCR petition, arguing that Bergrin rendered IAC by failing to investigate and prepare a defense and instead,

engaged in witness tampering. Defendant admitted there was overwhelming evidence of his involvement in Jenkins's murder and ample evidence he was involved with attempting to tamper with the State's witnesses, but argued that the tampering was conducted under Bergrin's guidance.[1]

In a pro se supplemental brief, defendant added that the judge erred by allowing the jury unfettered access to videotaped statements during deliberations; Bergrin was ineffective for failing to object to this procedure; and Bergrin gave him illegal and unethical advice to tamper with witnesses and recruit false alibi witnesses. Lastly, defendant argued that appellate counsel was ineffective during the remand hearing for failing to raise specific questions regarding alleged juror taint. In another supplemental brief, defendant added that Bergrin failed to challenge both the State's selective prosecution of defendant and the police coercion of Richardson. Defendant did not raise any conflict of interest argument.

In an April 9, 2014 written opinion, the judge denied the petition without an evidentiary hearing. The judge first found

---

[1] Defendant also argued that he declined a plea offer of twenty years as the result of Bergrin's assurances that "after all the witnesses disappeared, or refused to cooperate, or witnesses were manufactured as alibi witnesses, the State would be unable to convict" defendant. However, there was no evidence that the State made any plea offer.

that defendant's claim of trial court error was procedurally barred by Rule 3:22-4(a). Addressing the merits, the judge found there was no evidence that the jury had unfettered access to the videotaped statements; the law in effect at the time did not preclude such access; and defendant failed to show how the outcome would have been different.

The judge next determined there was no evidence implicating Bergrin in witness tampering or that Bergrin gave defendant illegal advice to tamper with witnesses. The judge found that none of the witnesses with whom defendant tampered said that Bergrin directly communicated with them or indirectly communicated with them through defendant. The judge also found that even if Bergrin's performance was deficient, defendant failed to show that the outcome would have been different; rather, defendant conceded there was overwhelming evidence of his involvement in Jenkins's murder. Lastly, the judge found there was no evidence supporting defendant's remaining IAC claims against Bergrin and no merit to or evidence supporting defendant's IAC claims against appellate counsel. This appeal followed.

On appeal, defendant raises the following contentions in assigned counsel's brief:

> POINT I:    THE TRIAL COURT ERRED IN DENYING THE DEFENDANT'S PETITION FOR

[PCR] WITHOUT AFFORDING HIM AN EVIDENTIARY HEARING TO FULLY ADDRESS HIS CONTENTION THAT HE FAILED TO RECEIVE ADEQUATE LEGAL REPRESENTATION AT THE TRIAL LEVEL.

A. THE PREVAILING LEGAL PRINCIPLES REGARDING CLAIMS OF [IAC], EVIDENTIARY HEARINGS AND PETITIONS FOR [PCR].

B. TRIAL COUNSEL DID NOT PROVIDE ADEQUATE LEGAL REPRESENTATION TO THE DEFENDANT AS A RESULT OF COUNSEL'S FAILURE TO OBJECT TO THE MANNER IN WHICH THE JURY WAS GIVEN UNFETTERED ACCESS TO TWO VIDEOTAPED STATEMENTS IN THE JURY ROOM DURING DELIBERATIONS.

C. THE DEFENDANT DID NOT RECEIVE ADEQUATE LEGAL REPRESENTATION FROM TRIAL COUNSEL AS A RESULT OF COUNSEL'S FAILURE TO CONDUCT ANY REASONABLE PRE[-]TRIAL PREPARATION OR INVESTIGATION, INSTEAD CONVINCING THE DEFENDANT TO ASSIST HIM IN ENGAGING IN CRIMINAL CONDUCT DESIGNED TO TAMPER WITH WITNESSES AND FABRICATE TRIAL TESTIMONY.

D. THE DEFENDANT FAILED TO RECEIVE ADEQUATE LEGAL REPRESENTATION FROM TRIAL COUNSEL SINCE, AS A RESULT OF COUNSEL'S CONDUCT ASSURING THE DEFENDANT HE WOULD NOT BE CONVICTED AT TRIAL AS LONG AS HE FOLLOWED HIS INSTRUCTIONS AND ADVICE, HE REJECTED THE STATE'S PLEA RECOMMENDATION AND INSTEAD PROCEEDED TO TRIAL, SUBSEQUENTLY RECEIVING A [SIXTY-FIVE] YEAR TERM WITH AN [EIGHTY-FIVE]

PERCENT PAROLE DISQUALIFIER AT SENTENCING, MORE THAN THREE TIMES GREATER THAN THE STATE'S PLEA OFFER.

In a pro se supplemental brief, defendant raises the following contentions:

POINT I:   [IAC] DUE TO TRIAL COUNSEL'S ILLEGAL ADVICE, CRIMINAL CONDUCT, AND LACK OF PREPARATION.

POINT II:   [IAC] DUE TO TRIAL COUNSEL'S MULTIPLE CONFLICTS.

POINT III:   COUNSEL ASSIGNED TO THE APPELLATE REMAND HEARING CONDUCTED ON SEPTEMBER 28, 2012 WAS INEFFECTIVE FOR FAILURE TO RAISE SPECIFIC QUESTIONS FOR THE COURT TO ASK THE ALLEGED TAINTED JUROR THAT WERE PERTINENT TO THE ISSUE AT HAND.

POINT IV:   INEFFECTIVE ASSISTANCE OF DIRECT APPEAL APPELLATE COUNSEL.

POINT V:   THE CUMULATIVE EFFECT OF THE ERRORS COMPLAINED OF RENDERED THE TRIAL UNFAIR.

To establish an IAC claim, a defendant must satisfy the two-pronged test formulated in Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674, 693 (1984), and adopted by our Supreme Court in State v. Fritz, 105 N.J. 42, 58 (1987). First, a defendant must show "that counsel made errors so serious that counsel was not functioning as the counsel guaranteed . . . by the Sixth Amendment." Fritz, supra,

11                                                    A-4965-13T1

105 N.J. at 52 (quoting Strickland, supra, 466 U.S. at 687, 104 S. Ct. at 2064, 80 L. Ed. 2d at 693).

Second, a defendant must prove that he suffered prejudice due to counsel's deficient performance. Strickland, supra, 466 U.S. at 687, 104 S. Ct. at 2064, 80 L. Ed. 2d at 693. A defendant must show by a "reasonable probability" that the deficient performance affected the outcome. Fritz, supra, 105 N.J. at 58. "If [a] defendant establishes one prong of the Strickland-Fritz standard, but not the other, his claim will be unsuccessful." State v. Parker, 212 N.J. 269, 280 (2012).

The mere raising of a claim of IAC does not entitle the defendant to an evidentiary hearing. State v. Cummings, 321 N.J. Super. 154, 170 (App. Div.), certif. denied, 162 N.J. 199 (1999). "A defendant shall be entitled to an evidentiary hearing only upon the establishment of a prima facie case in support of post-conviction relief . . . ." R. 3:22-10(b). A "prima facie case" requires that a defendant "demonstrate a reasonable likelihood that his or her claim, viewing the facts alleged in the light most favorable to the defendant, will ultimately succeed on the merits[,]" ibid., and must be supported by "specific facts and evidence supporting his allegations." State v. Porter, 216 N.J. 343, 355 (2013); see also Cummings, supra, 321 N.J. Super. at 170 (holding that "a

petitioner must do more than make bald assertions that he was denied the effective assistance of counsel"). "Because post-conviction relief is not a substitute for direct appeal and because of the public policy 'to promote finality in judicial proceedings,' our rules provide various procedural bars." State v. Echols, 199 N.J. 344, 357 (2009) (citations omitted) (quoting State v. McQuaid, 147 N.J. 464, 483 (1997)).

"[A] petitioner may be barred from relief if the petitioner could have raised the issue on direct appeal but failed to do so, Rule 3:22-4[, or] the issue was previously decided on direct appeal, Rule 3:22-5[.]" Ibid. The effect of Rule 3:22-4 is that PCR will be precluded if any ground for relief could have been raised at trial or on appeal. State v. Afanador, 151 N.J. 41, 50 (1997). We review a judge's decision to deny a PCR petition without an evidentiary hearing for abuse of discretion. State v. Preciose, 129 N.J. 451, 462 (1992).

We have considered defendant's contentions in Point I.B. of assigned counsel's brief and in Points III, IV and V of defendant's pro se supplemental brief in light of the record and applicable legal principles and conclude they are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2). We affirm substantially for the reasons expressed by the judge in his written opinion.

We reject defendant's contention in Point I.D. of assigned counsel's brief regarding defendant's alleged rejection of a plea offer. We reiterate there is no evidence the State made any plea offer to defendant.

We also reject defendant's contention in Point II of his pro se supplemental brief, raised for the first time on appeal, that Bergrin had a conflict of interest because the ECPO was actively investigating him for witness tampering. We decline to consider questions or issues not presented to the trial court when an opportunity for such a presentation was available unless the matter involves the trial court's jurisdiction or is of public importance. State v. Robinson, 200 N.J. 1, 20 (2009). No exception applies here. In any event, for the following reasons, the argument lacks merit.

Our Supreme Court has "adhered to a two-tiered approach in analyzing whether a conflict of interest has deprived a defendant of his state constitutional right to the effective assistance of counsel." State v. Cottle, 194 N.J. 449, 467 (2008). "In those cases in which [the Court has] found a per se conflict, prejudice is presumed in the absence of a valid waiver, and the reversal of a conviction is mandated." Ibid. However, the Court has limited findings of a conflict to cases in which an attorney is "contemporaneously under indictment in

14 <span>A-4965-13T1</span>

the same county as his client, and being prosecuted by the same prosecutor's office . . . absent a valid waiver by the client." Id. at 473.

Defendant waived any conflict of interest when he advised the court that he wanted Bergrin to continue representing him. In addition, the ECPO investigation report reveals that defendant was the focus of witness tampering, not Bergrin, and none of the witnesses the ECPO interviewed implicated Bergrin in defendant's witness tampering scheme. Moreover, the State did not rely on the ECPO investigation to disqualify Bergrin, and there never was any determination that Bergrin was involved in defendant's witness tampering.

Insofar as defendant argues, as he did on direct appeal, that Bergrin's conflict of interest stemmed from his federal indictment, we reject that argument as well. A federal grand jury returned an indictment in November 2009, two years after defendant's conviction. There was no evidence as to when federal authorities were investigating Bergrin and no evidence that the ECPO participated in that investigation. Unlike in Cottle, supra, where the defense attorney "was under indictment and subject to prosecution during the entire period of his representation," 194 N.J. at 466, there was no evidence that Bergrin was contemporaneously under indictment at the same time

as defendant, and Bergrin was not being prosecuted by the same prosecutor's office. Accordingly, there was no conflict of interest mandating reversal of defendant's conviction.

## II.

We next address defendant's contention in Point I.C. of assigned counsel's brief and Point I of defendant's pro se supplemental brief that he is entitled to IAC relief based on Bergrin's illegal and unethical advice to tamper with witnesses.

There is no doubt that defendant tampered with witnesses, but there is no competent evidence that Bergrin was directly or indirectly involved. Even if Bergrin was involved, defendant is not entitled to IAC relief when he participated in the illegal conduct or acquiesced in that conduct.

The notion that a defendant could successfully raise an IAC claim when he engaged in illegal conduct in collusion with his attorney or acquiesced in the attorney's illegal conduct has not been squarely addressed by our courts. By way of analogy, our Supreme Court has denied IAC relief to a defendant who claimed that but for trial counsel's deficient advice concerning sentencing consequences, and even though he was not guilty, he would have pled guilty rather than go to trial. State v. Taccetta, 200 N.J. 183, 192 (2009). The Court noted that "an attorney would be engaged in professional misconduct if he or

she knowingly assisted a client to perpetrate a fraud on the court by assisting or encouraging a client to lie under oath." Id. at 196. In denying IAC relief, the Court concluded as follows:

> If a trial court cannot accept a guilty plea that is known to be false, then it would be strange indeed for a PCR court to vacate a jury verdict following a fair trial on the ground that [the] defendant would have taken an advantageous plea offer with a limited sentence exposure if only he had been given the opportunity to lie under oath. A court cannot give its imprimatur to perjury or in any way suggest that the requirement of a truthful factual basis at a plea colloquy is an empty formality.
>
> [Id. at 197.]

As the Court further noted, "[j]ust because we are powerless to control or eliminate every negative practice in our criminal justice system does not mean that we must condone those practices." Id. at 198.

Other jurisdictions have addressed the issue of a defendant engaging or acquiescing in illegal conduct and afforded the defendant no IAC relief. For example, in Arnett v. State, 938 P.2d 1079 (Alaska Ct. App. 1997), the defendant claimed that trial counsel rendered ineffective assistance by illegally advising him to abscond from trial and assisting him in absconding. Id. at 1082. The Court of Appeals of Alaska held

the defendant was not entitled to IAC relief, reasoning as follows:

> We have no doubt that a lawyer who counsels a client to commit a crime for tactical gain acts incompetently. But by the same token, this form of advice falls so far beyond the pale of anything that could conceivably be considered legitimate legal assistance that a defendant's voluntary reliance on it is tantamount to a willing abandonment of competent representation. A defendant who voluntarily commits a crime on advice of counsel ought not to be allowed to impute blame to the attorney or to claim prejudice stemming from the attorney's incompetence; for in almost all such cases, the defendant's own voluntary acts will be a superseding cause of any resulting misfortune.
>
> [Id. at 1083.]

The court concluded that, even assuming there was attorney-client collusion, "[t]o grant relief in this case would permit [the defendant] to reap a windfall new trial on account of his own [crime]. We cannot allow this tempting gambit for counsel and client. In the circumstances alleged by [the defendant], [the defendant] must remain responsible for his own misconduct." Ibid. (third alteration in original) (citations omitted).

In DeHaven v. State, 618 So.2d 337 (Fla. Dist. Ct. App. 1993), the defendant claimed that he presented differing versions of the victim's shooting to trial counsel and counsel said he preferred to use the version more favorable to the

defendant.  Id. at 339.  The Florida District Court of Appeals stated that whether or not the defendant's IAC claim was true,

> [t]his motion does not present the picture of a hapless defendant whose lawyer knowingly or negligently ignored available evidence in favor of a less viable defense, nor of an unsophisticated individual deceived by an overzealous or unscrupulous advocate.  It is an admission of having knowingly perpetrated a fraud upon the court.  Even if it were true that counsel joined in or encouraged such misconduct – and we have only [the defendant's] allegation this occurred – this might be a matter for the Florida Bar, but would not require vacation of [the defendant's] conviction.
>
> [Id. at 339-340.]

In Commonwealth v. McNeil, 487 A.2d 802, 807 (Pa. 1985), the defendant claimed that trial counsel advised him to render perjured testimony.  Id. at 616-17.  Finding the defendant freely and deliberately chose to offer false testimony, the Supreme Court of Pennsylvania held that IAC relief is not available to a defendant who "attempts to reap a windfall new trial on account of his own perjury".  Id. at 618.  The court reasoned as follows:

> [t]he criminal justice system cannot and will not tolerate such an obvious and flagrant affront to the integrity of the truth determining process thinly disguised under the rubric of ineffective assistance. . . . [T]o hold otherwise would create a situation wherein a defendant, by design, could build into his case ineffective

assistance of counsel claims, thus guaranteeing himself a basis for a new trial if the verdict were adverse to him.

[Id. at 618-19 (citation omitted).]

In Kelley v. State, 644 S.W. 2d 571, 573 (Tex. Ct. App. 1982), defense counsel attempted to dispose of evidence. Though describing counsel's action as "reprehensible," the Court of Appeals of Texas denied IAC relief to the defendant, finding that he acquiesced in the tactic. Id. at 574.

Guided by the above principles, we hold that a defendant who participates in illegal conduct in collusion with his attorney or acquiesces in the attorney's illegal or unethical conduct is not entitled IAC relief. We will not tolerate what amounts to a fraud on the court, and will not permit a defendant who participates or acquiesces in his attorney's illegal or unethical conduct to reap any benefit of IAC relief. To hold otherwise would impermissibly permit a defendant to build an IAC claim into his case, thus guaranteeing him a basis for reversal of an adverse verdict.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4965-13T1