**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0708-18T4

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

v.

JEREMIAH A. JACKSON,

      Defendant-Appellant.

_____

Submitted February 4, 2020 – Decided March 11, 2020

Before Judges Yannotti and Hoffman.

On appeal from the Superior Court of New Jersey, Law Division, Atlantic County, Indictment No. 12-08-1955.

Joseph E. Krakora, Public Defender, attorney for appellant (John Vincent Molitor, Designated Counsel, on the brief).

Damon G. Tyner, Atlantic County Prosecutor, attorney for respondent (Nicole Lynn Campellone, Assistant Prosecutor, of counsel and on the brief).

Appellant filed a pro se supplemental brief.

PER CURIAM

Defendant appeals from an order entered by the Law Division on August 1, 2018, which denied his petition for post-conviction relief (PCR). We affirm.

I.

In August 2012, an Atlantic County grand jury returned Indictment No. 12-08-1955, charging defendant with second-degree burglary, while armed, N.J.S.A. 2C:18-2 (count one); second-degree conspiracy to commit burglary, N.J.S.A. 2C:5-2, N.J.S.A. 2C:18-2(a)(1) and (b)(2) (count two); second-degree burglary, during which bodily injury was inflicted, N.J.S.A. 2C:18-2 (count three); first-degree armed robbery, N.J.S.A. 2C:15-1 (count four); second-degree conspiracy to commit armed robbery, N.J.S.A. 2C:5-2, N.J.S.A. 2C:15-1 (count five); first-degree murder, N.J.S.A. 2C:11-3(a)(1) and (2) (count six); first-degree felony murder, N.J.S.A. 2C:11-3(a)(3) (count seven); first-degree felony murder, N.J.S.A. 2C:11-3(a)(2) (count eight); second-degree possession of a weapon (shotgun) for an unlawful purpose, N.J.S.A. 2C:39-4(a) (count nine); second-degree conspiracy to possess a weapon (shotgun) for an unlawful purpose, N.J.S.A. 2C:5-2, N.J.S.A. 2C:39-4(a) (count ten); second-degree possession of a weapon (handgun) for an unlawful purpose, N.J.S.A. 2C:39-4(a) (count eleven); second-degree conspiracy to possess a weapon (handgun) for an unlawful purpose, N.J.S.A. 2C:5-2, N.J.S.A. 2C:39-4(a) (count twelve); second-

2

degree unlawful possession of a weapon (shotgun), N.J.S.A. 2C:39-5(c)(1) (count thirteen); second-degree unlawful possession of a weapon (handgun); N.J.S.A. 2C:39-5(b) (count fourteen); and fourth-degree tampering with physical evidence, N.J.S.A. 2C:28-6(1) (count fifteen).

Defendant was tried before a jury. At the trial, the State presented evidence showing that on the evening of December 9, 2011, Ellis Spell, Jr. was in his bedroom with his cousins and a friend at the home of his parents, Rhonda Lawrence and Ellis Spell, Sr. At around 8:30 p.m., one of Ellis, Jr.'s cousins observed a person, who was apparently looking for his older brother, but he was not at home.

Ellis, Jr. turned on the porch light and saw a black male, dressed in black, with a "black shirt tied around his face." Ellis, Jr. realized that the man was holding a shotgun. He locked the door and ran to his bedroom to alert his cousins and his friend. One of Ellis, Jr.'s cousins saw a man on the porch holding "a long gun." He saw another person making his way around the house. Another cousin heard "pounding" on the front door or the porch wall and heard someone say, "[y]ou know what we [are] here for."

Ellis, Jr. went to the kitchen to lock the back door. He saw someone pointing "a silver revolver," and he went to warn his parents. Ellis, Sr. pushed

him into one of the bedrooms. Rhonda hid in a bedroom closet and called 9-1-1. She could hear Ellis, Sr. cursing at the men and demanding to know what they wanted. According to Rhonda, a man said, "You know what we came for." She heard Ellis, Sr. enter the bedroom and slam the door, after which there were sounds indicating that the men kicked the bedroom door open. She heard a scuffle and "three gunshots."

One of Ellis, Jr.'s cousins jumped out of the bedroom window and Ellis, Jr. followed. Ellis, Jr. said that before he left the house, he heard his father demand to know what the men wanted, followed by the sounds of a "tussle . . . like[] they were fighting." The cousin stated that once outside, he heard three gunshots. He saw three black men carrying what appeared to be two handguns and a long gun. They ran past him and entered a four-door vehicle.

Police responded to the 9-1-1 call and found Ellis, Sr. lying on his back on the bathroom floor. He was dead. The medical examiner determined that he had been struck by two, small-caliber bullets. One of the bullets entered at the bottom of his right cheek, exited his body, and reentered his chest. The second bullet pierced the right shoulder and traveled downward. The medical examiner attributed Ellis, Sr.'s death to the gunshot wounds and scalp lacerations.

4

Three days after the shooting, the police received a tip from a confidential informant and arrested Tyree Kelly on the street. Kelly was carrying the guns used in the murder and robbery. Kelly agreed to testify for the State. He stated that he and defendant were close friends. He met defendant the morning after the shooting. Defendant was with two other men, whom Kelly did not know. Defendant told Kelly he went to the Spell residence with an older man, who had a gun, and a "younger guy."

Defendant asked Kelly to get rid of the guns, which were dropped off at Kelly's apartment a day or two later. Defendant said he targeted the Spell residence for a robbery because he and the other men heard they were moving drugs out of the house. Defendant stated that when they entered the house, the older man had been "fighting . . . at the [back] door." He told Kelly there was a scuffle. The shotgun fell and discharged.

Kelly stated that he cleaned the guns so that he could sell them. Defendant's blood was found on the t-shirt Kelly used to clean the guns. Kelly was on his way to Philadelphia to sell the guns when the police arrested him. He said that shortly after the murder, defendant bragged about the shooting and admitted he "did it."

A-0708-18T4

The State's ballistics expert testified that the bullets found in Ellis, Sr.'s body had been fired from the handgun the police recovered from Kelly. In addition, the State's forensic scientist testified that a sweatshirt found on the floor of defendant's car had DNA of Ellis, Sr. and defendant.

The jury found defendant guilty of murder (count six), felony murder (count seven), burglary while armed with a firearm (count one), conspiracy to commit armed burglary (count two), burglary during which bodily injury was inflicted (count three), conspiracy to possess a weapon (shotgun) for an unlawful purpose (count ten), and conspiracy to possess a weapon (handgun) for an unlawful purpose (count twelve). The jury found defendant not guilty of the other charges.

The judge later sentenced defendant to an aggregate term of fifty years of imprisonment with an eighty-five-percent period of parole ineligibility pursuant to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2. Defendant appealed from the judgment of conviction dated September 24, 2013. He raised the following arguments:

> POINT I
> THE MURDER CONVICTION MUST BE REVERSED BECAUSE THE COURT FAILED TO CHARGE AGGRAVATED AND RECKLESS

MANSLAUGHTER AS LESSER-INCLUDED OFFENSES. (Not Raised Below).

POINT II
THE CONVICTIONS FOR BURGLARY AND BURGLARY FELONY MURDER MUST BE REVERSED BECAUSE THE COURT INSTRUCTED THE JURY THAT IN ORDER TO CONVICT DEFENDANT OF BURGLARY IT HAD TO FIND THAT HE ENTERED THE PREMISES FOR THE PURPOSE OF COMMITTING MURDER, BUT FAILED TO EXPLAIN THAT AS AN ACCOMPLICE, DEFENDANT MAY NOT HAVE SHARED THE PRINCIPAL'S INTENT TO COMMIT MURDER. (Not Raised Below).

POINT III
THE CONVICTIONS FOR BURGLARY AND BURGLARY FELONY MURDER MUST BE VACATED BECAUSE THE JURY FOUND, IN ACCORDANCE WITH THE COURT'S INSTRUCTION, THAT THE BURGLARY WAS COMMITTED FOR THE PURPOSE OF COMMITTING MURDER, AND THE STATE FAILED TO PROVE BEYOND A REASONABLE DOUBT THAT THAT WAS THE PURPOSE OF THE BURGLARY. (Not Raised Below).

POINT IV
THE CONVICTIONS FOR BURGLARY AND BURGLARY FELONY MURDER MUST BE VACATED BECAUSE THE STATE FAILED TO PROVE BEYOND A REASONABLE DOUBT THAT DEFENDANT ENTERED THE PREMISES WITHOUT LICENSE OR PRIVILEGE, AN ESSENTIAL ELEMENT OF BURGLARY. (Not Raised Below).

A-0708-18T4

POINT V
THE SENTENCE OF 50 YEARS, 42.5 YEARS WITHOUT PAROLE, IMPOSED ON THE MURDER CONVICTION IS EXCESSIVE AND IS BASED ON IMPROPER CONSIDERATIONS TREATED AS AGGRAVATING FACTORS.

We affirmed defendant's convictions and sentences in an unpublished opinion. State v. Jackson, No. A-1425-13 (App. Div. 2015) (slip op. at 9 to 24). Thereafter, the Supreme Court denied defendant's petition for certification. State v. Jackson, 223 N.J. 282 (2016).

II.

On April 28, 2016, defendant filed a pro se PCR petition in the Law Division, alleging he was denied the effective assistance of trial counsel. The court assigned counsel to represent defendant. Thereafter, defendant filed certifications dated November 17, 2016, and April 12, 2018, in support of his petition.

In his certifications, defendant claimed his trial attorney was ineffective because the attorney: (1) failed to advise him adequately with regard to the State's plea offer; (2) did not provide him with the discovery so that he could make an informed decision regarding the State's plea offer; (3) failed to challenge the State's DNA evidence; (3) advised him to reject the State's plea offer and go to trial because counsel "was familiar" with one of the jurors; (4)

A-0708-18T4

conceded defendant was present at the crime scene and was shot at that location; (5) failed to object to "expert-like" testimony of a witness who said defendant suffered an injury to his thumb; (6) did not conduct an independent investigation of certain suspects or contact other witnesses defendant identified; (7) did not request voir dire of a juror who was seen sleeping during trial; (8) failed to consult a DNA expert to test the results of the State's expert; and (9) did not object to the trial court's instructions.

On August 1, 2018, the PCR court heard oral argument and placed an oral decision on the record. The judge found that defendant was barred from raising many of the issues presented in his petition because they should have been raised on direct appeal. The judge further found that defendant failed to present a prima facie case of ineffective assistance of counsel.

The judge found that defendant had not established that his trial attorney was deficient in his handling of the case. The judge also found that defendant failed to show he was prejudiced by any of the attorney's claimed errors. The judge noted that at trial, the State had presented a strong case which established that defendant committed the offenses for which he was found guilty. The judge entered an order dated August 1, 2018, denying PCR. This appeal followed.

On appeal, defendant's appellate PCR counsel argues:

THIS COURT SHOULD REVERSE THE TRIAL COURT'S DECISION TO DENY DEFENDANT'S PETITION FOR POST-CONVICTION RELIEF WITHOUT AN EVIDENTIARY HEARING BECAUSE DEFENDANT RAISED A PRIMA FACIE CLAIM OF INEFFECTIVE ASSISTANCE OF COUNSEL THROUGH HIS ALLEGATIONS THAT HIS TRIAL COUNSEL FAILED TO CONTEST THE STATE'S EVIDENCE AND IMPROPERLY RELIEVED THE STATE OF ITS BURDEN TO PROVE HIS GUILT BEYOND A REASONABLE DOUBT.

Defendant has filed a pro se supplemental brief. He argues:

PCR COUNSEL WAS INEFFECIVE FOR FAILING TO CONDUCT AN INDEPENDENT INVESTIGATION OF THE LEGAL CLAIMS RAISED IN MY PETITION FOR POST CONVICTION RELIEF IN ACCORDANCE WITH THE [PRINCIPLES] ESTABLSIHED IN STATE [v.] RUE, [175 N.J. 1] (2002); [R.] 3:22-1.

III.

As noted, defendant argues that the PCR court erred by failing to conduct an evidentiary hearing on his petition. He contends he presented a prima facie case of ineffective assistance of counsel. We disagree.

An evidentiary hearing is only required on a PCR petition when the defendant has established a prima facie case in support of PCR, the court has determined there are material issues of disputed fact that cannot be resolved based on the existing record, and the court finds an evidentiary hearing

necessary to resolve the claims presented.  State v. Porter, 216 N.J. 343, 354 (2013) (citing R. 3:22-10(b)).  "To establish a prima facie case, defendant must demonstrate a reasonable likelihood that his or her claim, viewing the facts alleged in the light most favorable to the defendant, will ultimately succeed on the merits."  R. 3:22-10(b).

To prevail on a claim of ineffective assistance of counsel, a defendant must show by a preponderance of the evidence that: (1) counsel's performance was deficient; and (2) the deficient performance prejudiced the defendant.  See State v. Fritz, 105 N.J. 42, 58 (1987) (adopting the two-prong test from Strickland v. Washington, 466 U.S. 668, 687 (1984) for proving ineffective assistance of counsel).  The "mere raising of a claim of [ineffective assistance of counsel] does not entitle the defendant to an evidentiary hearing."  State v. Peoples, 446 N.J. Super. 245, 254 (App. Div. 2016).  A court should not grant an evidentiary hearing if "defendant's allegations are too vague, conclusory, or speculative."  R. 3:22-10(e)(2).

To satisfy the first prong of the Strickland test, a defendant must overcome a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  Strickland, 466 U.S. at 689.  A deficient performance means that "counsel made errors so serious that counsel was not

functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687.

Furthermore, to establish the prejudice prong, the defendant must establish "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome of the matter." Id. at 694.

However, in order to establish a prima facie claim, a defendant "must do more than make bald assertions he was denied the effective assistance of counsel." State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999). The defendant "must allege facts sufficient to demonstrate counsel's alleged substandard performance." Ibid. Moreover, when a defendant claims his trial attorney did not adequately investigate the case, "he must assert the facts an investigation would have revealed, supported by affidavits or certifications based upon the personal knowledge of the affiant or the person making the certification." Ibid. (citing R. 1:6-6).

On appeal, defendant argues that his trial attorney was deficient because he failed to perform an independent investigation to locate certain unnamed "suspects." He contends his attorney "did nothing" to contest the State's DNA

evidence. He also contends his attorney's lack of effort left him with two choices – either plead guilty to a crime he allegedly did not commit, or go to trial with an attorney who "refused to do anything to contest the State's evidence."

As stated previously, defendant claims his trial attorney failed to conduct an adequate investigation of other "suspects" or persons who could have provided testimony exonerating him. However, he did not identify those persons, nor did he provide the PCR court with any affidavits or certifications from these individuals, based upon their personal knowledge, setting forth their proposed testimony.

Defendant also claims his trial attorney was deficient because he failed to challenge the State's DNA evidence. However, he did not provide the PCR court with an affidavit or certification from a qualified DNA expert, setting forth an opinion with the basis upon which the State's DNA evidence could have been challenged.

Defendant also alleges that his trial attorney was deficient because he failed to provide him with discovery. He claims that without such information, he was not able to make an informed decision regarding the State's plea offer. The PCR court found, however, that record of the pre-trial conference on

December 17, 2012, refuted defendant's claims. The record supports that finding.

At the pre-trial conference, the judge noted that defendant had been charged with various offenses in fifteen counts. Defendant's attorney told the judge that he had reviewed the discovery with defendant, and that he had discussed the State's plea offer with defendant. The record shows that under the State's plea offer, defendant would plead guilty to felony murder and the State would recommend a twenty-five-year prison term, with an eighty-five percent period of parole ineligibility, pursuant to NERA.

The prosecutor briefly summarized the facts of the case. He said that at trial, the State intended to prove that defendant and two unnamed persons went to the victim's house. The prosecutor said defendant and the other persons tried to get in the front door, but they were "stymied." According to the prosecutor, defendant and the others entered the house through the back door and surprised the victim while he was in the shower. They shot and killed the victim and fled in an automobile. The prosecutor said the State's evidence included the weapons used in the incident, DNA evidence of defendant and the victim, and witness testimony.

14

The judge then questioned defendant on the record. The judge told defendant he faced serious charges including murder, felony murder, and armed robbery. The judge explained that if convicted of felony murder, defendant could be sentenced to life imprisonment, with a lengthy period of parole ineligibility. The judge also told defendant that if he were convicted of other offenses, additional sentences could be imposed, which could be consecutive.

The judge asked defendant if he understood what he had told him. Defendant said, "Yes." Defendant stated that he wanted to reject the State's plea offer and proceed to trial. The judge asked defendant if he was sure he wanted to "turn down [twenty-five years]." Defendant replied, "Yes."

Thus, the record establishes that defendant was provided with the discovery and that trial counsel had advised defendant concerning the State's plea offer. Defendant told the judge he wanted to reject the offer. He did not have any questions, or suggest he had not been adequately counseled regarding the plea offer.

Defendant also claims that his attorney failed to discuss trial strategy with him. However, defendant has not explained the strategies he believes counsel should have discussed with him, or how the alleged lack of these discussions prejudiced his defense. As we stated previously, defendant "must do more than

make bald assertions that he was denied the effective assistance of counsel." Ibid.

We therefore conclude that the record supports the PCR court's finding that defendant failed to establish that his attorney's performance was deficient. The record also supports the court's determination that defendant failed to show he was prejudiced by counsel's alleged deficiencies. As the PCR court found, the State presented strong evidence at trial, which supported the jury's verdict. Assuming that trial counsel's handling of the matter was deficient in some respects, defendant failed to show the result here probably would have been different, but for those alleged deficiencies.

We also conclude that because defendant failed to present a prima facie claim of ineffective assistance of counsel, the PCR court correctly determined that defendant was not entitled to an evidentiary hearing on his petition.

IV.

As noted, in his pro se supplemental brief, defendant contends he was denied the effective assistance of PCR counsel because counsel failed to conduct an independent investigation of the claims raised in his petition. He claims he

asked his attorney to consult a DNA expert to examine the DNA evidence and requested counsel to file a motion for post-conviction DNA testing. He also disputes the State's evidence that a sweatshirt was found in his car with bloodstains on it.

In addition, defendant asserts that PCR counsel failed to investigate whether his trial attorney advised him of his sentencing exposure when the State made its plea offer. He claims the plea offer was "actually" an offer of twenty-five years to life, instead of an offer of twenty-five years with an eighty-five percent period of parole ineligibility. He alleges he relied upon his trial attorney to advise him properly during the trial and pre-trial plea discussions.

Defendant claims that at the pre-trial conference, the trial judge "attempted" to explain his sentencing exposure. He asserts, however, that this was his attorney's responsibility. He states that his trial attorney did not fully explain the plea offer to him and he did not "fully understand" the State's offer. He asserts that he "naively" rejected the State's plea offer because his attorney did not "fully" explain it to him.

Defendant also claims his trial attorney was ineffective because he conducted plea negotiations before the court ruled on his pre-trial motions. He contends plea negotiations should be conducted after the court decides the pre-

trial motions so that he could be in a better position to determine whether to accept the plea offer or proceed to trial.

We are convinced that defendant's supplemental arguments lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2). We note, however, that defendant has not shown that PCR counsel was deficient in handling the petition, or that the matter would have been resolved differently if PCR counsel had conducted a further investigation of defendant's claims or consulted with a DNA expert.

Defendant did not provide any certification or affidavit explaining what a further investigation would have revealed. He failed to establish that the result of a PCR proceeding would have been different if PCR counsel had conducted a further investigation.

Moreover, as noted previously, the PCR court addressed defendant's claim that his trial counsel failed to advise him adequately regarding the State's plea offer, and correctly determined that defendant failed to establish that his attorney's advice regarding the plea was deficient. The contention that PCR counsel was deficient in handling that issue is entirely without merit. Defendant's other claims that he was denied the effective assistance of PCR counsel are unsupported by the record.

A-0708-18T4

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-0708-18T4