**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0317-22

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

LUIS CASTRO-ALMONTE,

     Defendant-Appellant.

_____

Submitted November 14, 2023 – Decided November 28, 2023

Before Judges Mayer and Enright.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Indictment No. 19-02-0291.

Joseph E. Krakora, Public Defender, attorney for appellant (Richard Sparaco, Designated Counsel, on the brief).

Matthew J. Platkin, Attorney General, attorney for respondent (Sarah D. Brigham, Deputy Attorney General, of counsel and on the brief).

PER CURIAM

Defendant Luis Castro-Almonte appeals from an August 15, 2022 order denying his petition for post-conviction relief (PCR) following an evidentiary hearing. We affirm, substantially for the reasons set forth by Judge Benjamin S. Bucca in his well-reasoned oral opinion.

I.

In December 2019, defendant pled guilty to second-degree aggravated assault, N.J.S.A. 2C:12-1(b)(1) and N.J.S.A. 2C:2-6. The plea form he signed and initialed before entering his guilty plea reflected that he circled "No" in response to question 17(a), which asked, "Are you a citizen of the United States?" Defendant also circled "Yes" to questions 17(b) and 17(c), which respectively asked: "Do you understand that if you are not a citizen of the United States, this guilty plea may result in your removal from the United States and/or stop you from being able to legally enter or re-enter the United States?"; and "Do you understand that you have the right to seek individualized advice from an attorney about the effect your guilty plea will have on your immigration status?" Although defendant answered, "No" to question 17(d), which inquired whether he discussed the potential immigration consequences of his plea with an attorney, defendant also responded, "No" to the follow-up question at 17(e), "Would you like the opportunity to do so?"

2

During defendant's plea colloquy before Judge Bucca, defendant testified: (1) he was not a United States citizen; (2) he understood "if the United States should bring deportation proceedings against [him]," it "w[ould] result in [his] deportation"; and (3) he had the chance to seek counsel from an immigration attorney before pleading guilty. Judge Bucca informed defendant that he believed defendant previously told him he "had already consulted with an immigration attorney." The judge then asked, "is that right?" Defendant stated, "Yes." Judge Bucca probed further, asking defendant, "knowing the immigration consequences of this plea[,] . . . you still wish to go forward[,] is that correct?" Defendant responded, "Yes."

Defendant also testified he understood that in exchange for his guilty plea, the State recommended he be sentenced in the third-degree range to three years in prison, and that his remaining charges be dismissed. Further, defendant stated he had enough time to review discovery with plea counsel and was satisfied with counsel's advice.

In providing a factual basis for his guilty plea, defendant testified that on September 18, 2018, after he argued with a co-worker and the "fight died down," he "walked up to [the co-worker] and hit him with a wooden . . . piece of furniture," breaking the co-worker's leg. The judge accepted the plea, finding

A-0317-22

defendant entered it "freely[,] . . . voluntarily[,] and knowing[ly]." At the conclusion of the hearing, plea counsel told Judge Bucca that defendant understood he was "getting a . . . great deal," considering the State agreed to recommend a sentence in the third-degree range for defendant's second-degree offense.

At defendant's March 2020 sentencing, plea counsel reiterated his appreciation for the State's sentencing recommendation. Judge Bucca then sentenced defendant to a three-year prison term, subject to the No Early Release Act, N.J.S.A. 2C:43-7.2, consistent with the plea agreement. Defendant did not appeal from his sentence or conviction.

In April 2021, defendant received notice that deportation proceedings were instituted against him. The following month, he filed a timely pro se petition for PCR, claiming plea counsel was ineffective for failing to inform defendant he would face deportation if he pled guilty to his aggravated assault charge. PCR counsel subsequently filed a supporting brief, incorporating defendant's ineffective assistance of counsel (IAC) claims.

In August 2022, Judge Bucca conducted an evidentiary hearing to address defendant's IAC claims. Defendant's plea counsel testified at the hearing and stated he "knew from the beginning[,] . . . and told [defendant that he] would be

4

deported" because defendant had "close to zero chance . . . at winning []at trial." Plea counsel explained he knew defendant's attack on his co-worker occurred in front of "[m]ultiple witnesses" who confirmed "defendant assaulted the victim," and defendant "made certain admissions about the assault to the police." Further, plea counsel stated he told defendant he "should speak to an immigration attorney" about his aggravated assault charge because it was an "[e]xtremely deportable offense."

During defendant's testimony at the hearing, he stated he did not "fully understand" the immigration consequences of his guilty plea. He also denied speaking with an immigration attorney before pleading guilty. Further, defendant testified plea counsel "never [said] anything about deportation" to him, but instead, told defendant if he pled guilty to aggravated assault, he "could lose [his] right to become a citizen."

After defendant's testimony concluded, Judge Bucca placed his decision on the record, denying the PCR petition. The judge credited plea counsel's testimony over defendant's and rejected defendant's claim that but for plea counsel's purported ineffectiveness, defendant would not have pled guilty. The judge reminded defendant that during the plea hearing, defendant admitted he was "not a citizen of the United States" and that he testified he understood his

5

guilty plea would "result in [his] deportation" "if the United States . . . br[ought] deportation proceedings against" him. Further, the judge found that "by [defendant's] own admission," plea counsel's predecessor also advised defendant he would be deported if he pled guilty to aggravated assault.

Additionally, the judge concluded the terms of defendant's plea agreement "were extremely favorable" and defendant failed to "provide[] th[e] court with any credible evidence that he would have rejected the favorable terms of []his plea if he had known he could be deported." Thus, the judge found "defendant understood the consequences of his plea, understood the favorable terms that were negotiated on [his] behalf . . . [and] freely[,] . . . voluntarily[,] . . . knowingly[,] and intelligently entered into the plea." The judge also concluded defendant "failed to . . . establish[] by a preponderance of the evidence that one, . . . there were omissions by [plea counsel] but secondly, that he would have not entered into a plea but for these alleged omissions."

## II.

On appeal, defendant presents a single argument for our consideration:

> POINT I
>
> THE PCR COURT'S FINDINGS WERE NOT SUPPORTED BY SUFFICIENT CREDIBLE EVIDENCE IN THE RECORD BECAUSE THE PLEA FORM AND DEFENDANT'S TESTIMONY

6

> PLAINLY SHOWED THAT DEFENDANT WAS NOT INFORMED OF THE IMMIGRATION CONSEQUENCES OF HIS GUILTY PLEA AND THAT DEFENDANT WOULD NOT HAVE ACCEPTED THE PLEA HAD HE BEEN ADEQUATELY ADVISED.

This argument lacks merit.  R. 2:11-3(e)(2).  We add the following comments.

Our review of a PCR claim after a court holds an evidentiary hearing "is necessarily deferential to [the] . . . court's factual findings based on its review of live witness testimony."  State v. Nash, 212 N.J. 518, 540 (2013).  But we review the legal conclusions of a PCR court de novo.  State v. Harris, 181 N.J. 391, 419 (2004).

To succeed on an IAC claim, a defendant must satisfy the two-prong test enunciated in Strickland v. Washington, 466 U.S. 668 (1984).  Failure to satisfy either prong requires the denial of a PCR petition.  Id. at 700.

Under the first Strickland prong, a defendant must show counsel's performance "fell below an objective standard of reasonableness" and "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  Id. at 687-88.  "The quality of counsel's performance cannot be fairly assessed by focusing on a handful of issues while ignoring the totality of counsel's performance in the context of the State's evidence of defendant's guilt."  State v. Castagna, 187 N.J. 293, 314

7

(2006) (citation omitted).  Further, there is a strong presumption counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  Strickland, 466 U.S. at 690.

To satisfy the second Strickland prong, a defendant "must show that the deficient performance prejudiced the defense."  Id. at 687.  Because prejudice is not presumed, State v. Fritz, 105 N.J. 42, 52 (1987), a defendant is required to demonstrate "how specific errors of counsel undermined the reliability" of the proceeding.  United States v. Cronic, 466 U.S. 648, 659 n.26 (1984).  A defendant also must establish a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Strickland, 466 U.S. at 694.

In the context of a PCR petition challenging a guilty plea based on an IAC claim, the second prong is established when the defendant demonstrates a "reasonable probability that, but for counsel's errors, [the defendant] would not have pled guilty and would have insisted on going to trial."  State v. Nuñez-Valdéz, 200 N.J. 129, 139 (2009) (alteration in original) (quoting State v. DiFrisco, 137 N.J. 434, 457 (1994)).  But a defendant also must show "a decision to reject the plea bargain would have been rational under the circumstances."  Padilla v. Kentucky, 559 U.S. 356, 372 (2010).

A defendant can establish an IAC claim if plea counsel provided false or inaccurate advice that a guilty plea would not result in deportation. Nuñez-Valdéz, 200 N.J. at 139-42; see also State v. Chau, 473 N.J. Super. 430, 443-44 (App. Div. 2022) (noting that in post-Padilla pleas, "when the deportation consequence is truly clear," "plea counsel [is] obligated to 'advise [a] client regarding the risk of deportation,'" whereas "[w]hen the law is not succinct and straightforward[,] . . . a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences.") (third alteration in original) (quoting Padilla, 559 U.S. at 357, 367, 369).

A defendant is required to establish entitlement to "PCR by a preponderance of the evidence." State v. O'Donnell, 435 N.J. Super. 351, 370 (App. Div. 2014) (citation omitted). A defendant's IAC claims "must be supported by 'specific facts and evidence supporting [the IAC] allegations.'" State v. Peoples, 446 N.J. Super. 245, 254 (App. Div. 2016) (quoting State v. Porter, 216 N.J. 343, 355 (2013)).

Governed by these standards, we discern no reason to disturb the August 15, 2022 order. Accordingly, we affirm for the reasons set forth in Judge Bucca's thoughtful opinion.

A-0317-22

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-0317-22