**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3677-21

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

TENNEYSON D.
FAIRCLOUGH,

    Defendant-Appellant.

_____

Argued December 5, 2023 – Decided January 26, 2024

Before Judges Haas and Gooden Brown.

On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Indictment No. 17-07-0938.

Steven E. Braun, Designated Counsel, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Steven E. Braun, on the brief).

Leslie-Ann Marshall Justus, Deputy Attorney General, argued the cause for respondent (Matthew J. Platkin, Attorney General, attorney; Leslie-Ann Marshall Justus, of counsel and on the brief).

PER CURIAM

Defendant Tenneyson Fairclough appeals from the June 29, 2022, Law Division order denying his petition for post-conviction relief (PCR) without an evidentiary hearing. We affirm.

I.

We glean these facts from the record. On July 10, 2017, defendant was charged in a seven-count indictment with two counts of first-degree attempted murder, N.J.S.A. 2C:5-1 and N.J.S.A. 2C:11-3 (counts one and two); two counts of second-degree aggravated assault, N.J.S.A. 2C:12-1(b)(1) (counts three and four); second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a) (count five); second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b) and N.J.S.A. 2C:58-4 (count six); and second-degree certain persons not to have weapons, N.J.S.A. 2C:39-7(b)(1) (count seven). The charges stemmed from defendant firing a gun into a car occupied by two of his acquaintances outside a bar in Aberdeen on December 22, 2016. One of the victims sustained a gunshot wound and both victims identified defendant as the shooter.

A-3677-21

After losing a <u>Wade</u>[1] hearing challenging the out-of-court identifications, on September 17, 2018, defendant entered a negotiated guilty plea to counts one (attempted murder) and six (unlawful possession of a weapon). In exchange, the State agreed to dismiss the remaining counts of the indictment and recommend an aggregate sentence of twelve years imprisonment, subject to an eighty-five percent period of parole ineligibility pursuant to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2.[2]

Despite defendant indicating on the plea form that he was a United States citizen, prior to sentencing, his attorney confirmed that he was not a United States citizen. As a result, defendant moved to withdraw his guilty plea and submitted a supporting certification by his attorney averring that defendant's mother had been advised by an immigration attorney that "a plea of guilty will almost definitely result in [defendant's] deportation." On March 29, 2019, the plea judge granted defendant's motion to withdraw his guilty plea with the State's consent.

---

[1]  <u>United States v. Wade</u>, 388 U.S. 218 (1967).

[2]  Defendant was also extended term eligible as a result of which he faced a maximum sentencing exposure of life imprisonment if convicted of attempted murder at trial. <u>See</u> N.J.S.A. 2C:43-6, -7.

Thereafter, on May 22, 2019, defendant entered a renegotiated guilty plea to counts three (aggravated assault) and six (unlawful possession of a weapon). In exchange, the State agreed to recommend an aggregate term of ten years' imprisonment, subject to NERA, but defense counsel would request an aggregate eight-year NERA term over the State's objection. During the plea hearing, the judge thoroughly reviewed the nature of the charges and the terms of the plea agreement with defendant, and ensured that defendant had a full understanding of the consequences of his plea. Defendant confirmed that he had consulted with an immigration attorney, that he was entering the guilty plea with the "assum[ption]" that he would be deported, and that he was satisfied with his attorney's representation.

Critically, during the plea colloquy, the following exchange occurred between the judge and defendant:

> [COURT]: Okay. I ask you all these questions, and it may feel like I'm asking you the same question over and over again . . . but I need you to understand that if I accept your plea today, I'm not going to give you your plea back just because you changed your mind later today. Okay? So now is the time to speak. Do you understand?
>
> [DEFENDANT]: Yes.
>
> [COURT]: Okay. And knowing all of that, you still wish to plead guilty?

[DEFENDANT]: Yes.

In providing a factual basis for the plea, defendant responded to his attorney's and the court's questions as follows:

> [DEFENSE COUNSEL]: . . . on December 22, 2016 at about 9:53 in the evening, were you in Aberdeen, New Jersey?
>
> [DEFENDANT]: Yes.
>
> [DEFENSE COUNSEL]: And were you in the area of the Masonic Lodge . . . .?
>
> [DEFENDANT]: Yes.
>
> [DEFENSE COUNSEL]: And while you were there, at some point did you have a gun on your person?
>
> [DEFENDANT]: Yes.
>
> [DEFENSE COUNSEL]: And you knew that the gun that you had was a gun, right?
>
> [DEFENDANT]: Yes.
>
> [DEFENSE COUNSEL]: Did you have any kind of permit to carry a gun?
>
> [DEFENDANT]: No.
>
> [DEFENSE COUNSEL]: And so you knew that it was not lawful for you to have a gun on your person, is that correct?
>
> [DEFENDANT]: Yes.

5

[DEFENSE COUNSEL]: And at some point on December 22, 2016, did you take that gun and shoot into the car where you knew that a man by the initials of J.G. was sitting?

[DEFENDANT]: Yes.

[DEFENSE COUNSEL]: And when you shot in the car where J.G. was sitting, did you do that because you were trying to cause him serious bodily harm?

[DEFENDANT]: Yes.

. . . .

[COURT]: All right. And you knew who J.G. was?

[DEFENDANT]: Yes.

[COURT]: Okay. And who was he? Can you tell me?

. . . .

[DEFENDANT]: Somebody that was at the bar.

[COURT]: Okay. And . . . so you fired the gun and you shot him, yes?

[DEFENDANT]: Yes.

[COURT]: And you knew that you actually hit him?

[DEFENDANT]: Yes.

[COURT]: Okay. And you understand that you caused him serious bodily injury?

6

[DEFENDANT]:  Yes.

[COURT]:  And you intended to do that at the time that you shot him?

[DEFENDANT]:  Yes.

After ensuring compliance with <u>Rule</u> 3:9-2, governing the entry of guilty pleas, the judge accepted defendant's plea.

At the sentencing hearing conducted on July 10, 2019, defense counsel argued for leniency, asserting that "probably the most serious repercussion to [defendant] from this conviction is that he will be deported."  Defense counsel continued that an immigration attorney had said "it [was] almost 100 percent certain that [defendant would] be deported."  In acceding to defense counsel's request for leniency, the judge weighed heavily "the fact that there [was] certain deportation in this case."  Accordingly, the judge sentenced defendant to eight years' imprisonment, subject to NERA, on the aggravated assault charge, and a concurrent five years' imprisonment, with forty-two months of parole ineligibility pursuant to the Graves Act, N.J.S.A. 2C:43-6(c), on the weapons offense.

Defendant did not file a direct appeal.  However, on August 20, 2021, defendant filed a timely PCR petition, which was later supplemented by assigned counsel.  In his petition, defendant asserted, among other things, that

7

his attorney was ineffective by failing to pursue a speedy trial motion and failing to object to defendant's inadequate factual basis. Defendant also asserted that defense counsel's "cumulative errors" amounted to ineffective assistance of counsel (IAC). Additionally, defendant sought to withdraw his guilty plea for a second time.

Following oral argument conducted on June 27, 2022, the PCR judge entered an order on June 29, 2022, denying defendant's petition without an evidentiary hearing. In an accompanying written decision, the judge reviewed the factual background and procedural history of the case, applied the governing legal principles, and concluded defendant failed to establish a prima facie claim of IAC.

Specifically, the judge determined defendant failed to show that his attorney's performance fell below the objective standard of reasonableness set forth in Strickland v. Washington, 466 U.S. 668, 687 (1984), and adopted by our Supreme Court in State v. Fritz, 105 N.J. 42, 49-58 (1987). According to the judge, "[t]o the contrary, plea counsel did an extraordinary job in ultimately negotiating a second plea agreement that permitted defendant to plead to a less serious crime and resulted in a sentence that was four years lower than the one

defendant initially agreed to." The judge also concluded that defendant was not entitled to an evidentiary hearing.

In rejecting defendant's contention that his attorney was ineffective by failing to pursue a speedy trial motion, the judge acknowledged that there was a thirty-one-month delay between defendant's arrest on December 26, 2016, and sentencing on July 10, 2019. However, after applying the factors identified in Barker v. Wingo, 407 U.S. 514 (1972), to evaluate a speedy trial claim,[3] the judge concluded "[d]efendant provide[d] no facts to support his argument that had plea counsel filed a motion to dismiss on speedy trial grounds it would have been successful." See State v. O'Neal, 190 N.J. 601, 619 (2007) ("It is not ineffective assistance of counsel for defense counsel not to file a meritless motion . . . .").

In support, the judge pointed out that defendant "was responsible for most of th[e] delay first, by filing pre-trial motions which required a hearing, then entering a guilty plea . . . falsely indicating he was a United States citizen, and

---

[3]  The four factors identified in Barker "to determine when a delay infringes upon a defendant's due process rights" are "the '[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant.'" State v. Tsetsekas, 411 N.J. Super. 1, 8 (App. Div. 2009) (alteration in original) (quoting Barker, 407 U.S. at 530). Our Supreme Court adopted the Barker test in State v. Szima, 70 N.J. 196, 200-01 (1976).

then moving to withdraw the plea in order to seek advice from an immigration attorney."  See State v. Gallegan, 117 N.J. 345, 355 (1989) ("Any delay that defendant caused or requested would not weigh in favor of finding a speedy trial violation." (citing United States v. Loud Hawk, 474 U.S. 302, 316 (1986))). Further, the judge noted "there [was] no indication in the record that defendant ever asserted a desire for a trial."  Additionally, the judge stressed that defendant "actually benefitted from the delay" because defendant was ultimately "sentenced to eight years, four years less than the original offer defendant accepted."

Turning to defendant's claim that his attorney was ineffective by failing to object to an inadequate factual basis, the judge determined the claim lacked merit on procedural and substantive grounds.  Procedurally, the judge explained the claim was "barred as it could have been raised on direct appeal."  See State v. Peoples, 446 N.J. Super. 245, 254-55 (App. Div. 2016) ("'[A] petitioner may be barred from relief if the petitioner could have raised the issue on direct appeal but failed to do so, Rule 3:22-4 . . . .'" (alteration in original) (quoting State v. Echols, 199 N.J. 344, 357 (2009))).

Substantively, the judge rejected defendant's claim that his factual basis was inadequate "because he answered questions from his counsel and the court with 'yes' and 'no' responses," reasoning:

> [T]he use of leading questions is permitted when a factual basis for a plea is elicited. State v. Smullen, 118 N.J. 408 (1990). It is inconsequential that defendant did not provide an adequate factual basis in narrative form. His answers to questions from his counsel and the court were sufficient to establish that he committed the charged offense[s].

In this ensuing appeal, defendant raises the following points for our consideration:

> POINT I – THE PLEA BARGAIN IS INVALID BECAUSE IT INCLUDED A PLEA OF GUILTY TO N.J.S.A. 2C:39-5[(B)] WHICH IS UNCONSTITUTIONALLY OVERBROAD[.] (NOT RAISED BELOW).
>
> POINT II – ASSUMING ARGUENDO THAT N.J.S.A. 2C:39-5[(B)] IS NOT UNCONSTITUTIONAL ON ITS FACE, DEFENDANT'S PLEA OF GUILTY NONETHELESS MUST FAIL BECAUSE THE FACTUAL BASIS OMITTED ANY QUESTIONS AS TO WHETHER DEFENDANT HAD CARRIED THE HANDGUN IN QUESTION FOR PURPOSES NOT RELATED TO SELF-DEFENSE[.] (NOT RAISED BELOW).
>
> POINT III – N.J.S.A. 2C:39-5[(B)] IS UNCONSTITUTIONALLY VAGUE AS APPLIED TO DEFENDANT[.] (NOT RAISED BELOW).

11

POINT IV – DEFENDANT IS ENTITLED TO AN EVIDENTIARY HEARING BECAUSE OF INEFFECTIVE ASSISTANCE OF COUNSEL REGARDING HER FAILURE TO REQUEST A SPEEDY TRIAL.

POINT V – AS RAISED BY DEFENSE COUNSEL PRIOR TO THE PCR HEARING, THE FACTUAL BASIS WAS INADEQUATE.

POINT VI – CUMULATIVE ERRORS BY COUNSEL CONSTITUTED INEFFECTIVE ASSISTANCE OF COUNSEL (ARGUED BY PCR DEFENSE COUNSEL BUT NOT RULED ON BY THE COURT).

POINT VII – DEFENDANT SHOULD HAVE BEEN ALLOWED TO WITHDRAW HIS GUILTY PLEA.

## II.

In Points I, II, and III, defendant argues for the first time on appeal that "his plea bargain is invalid" because N.J.S.A. 2C:39-5(b) is "facially unconstitutional," and is "unconstitutionally vague as applied to [him] because it required [him] to obtain a carrying permit notwithstanding his right to carry a gun for self-defense."[4] In support, defendant relies on N.Y. State Rifle & Pistol Ass'n v. Bruen, 597 U.S. 1, 142 S. Ct. 2111 (2022), arguing that inasmuch as

---

[4] N.J.S.A. 2C:39-5(b) provides that "[a]ny person who knowingly has in his possession any handgun . . . without first having obtained a permit to carry the same as provided in [N.J.S.A.] 2C:58-4, is guilty of a crime of the second degree."

"the United States Supreme Court has in effect held N.J.S.A. 2C:39-5[(b)] to be unconstitutional because it requires citizens to obtain a carrying permit, a requirement not justified by the Second and Fourteenth Amendments, defendant's plea bargain cannot stand." Defendant continues that assuming N.J.S.A. 2C:39-5(b) is constitutional, his "factual basis nonetheless should have included, at a minimum, [self-defense related] questions."[5]

We decline to consider defendant's constitutional challenge because it was not presented to the PCR judge. "Generally, an appellate court will not consider issues, even constitutional ones, which were not raised below." State v. Galicia, 210 N.J. 364, 383 (2012). As our Supreme Court explained:

> Appellate review is not limitless. The jurisdiction of appellate courts rightly is bounded by the proofs and objections critically explored on the record before the trial court by the parties themselves. . . . In short, the points of divergence developed in

---

[5] The State counters that although Bruen "struck down" the "'justifiable need'" to carry a handgun requirement contained in N.J.S.A. 2C:58-4(d), "it did not disturb any other parts of the states' handgun-permitting laws." Thus, according to the State, notwithstanding Bruen's holding, disqualifying criteria for certain applicants seeking to obtain a handgun carry permit remain in effect and defendant was otherwise disqualified from obtaining a permit due to his lengthy prior criminal history. Further, the State continues, Bruen did not invalidate "the requirement[] . . . that individuals must first obtain a permit before carrying firearms in public," a requirement defendant failed to satisfy. (Emphasis added). After Bruen was decided, the Legislature amended N.J.S.A. 2C:58-4 in December 2022, see L. 2022, c. 131, § 3, but has not amended or supplemented N.J.S.A. 2C:39-5(b).

proceedings before a trial court define the metes and bounds of appellate review.

The reason for that limitation undergirds the very structure of our legal traditions. As eloquently explained by an experienced and revered appellate judge:

> . . . . [O]ur appellate courts step into the shoes of the trial judge and view the facts and issues as they were presented to him[ or her].
>
> But there is more than history and tradition supporting our adherence to the record made below. There is an instinct of fairness due both the trial judge . . . and a litigant's adversary, a sense that one's opponent should have a chance to defend, explain, or rebut some challenged ruling and that the trial judge should have a clear first chance to address the issue. Indeed, if appellate courts were to consider some unpreserved issues but not others, depending on gradations of sympathy, the result would be an extremely uneven playing field.
>
> There is also the canny recognition that if late-blooming issues were allowed to be raised for the first time on appeal, this would be an incentive for game-playing by counsel, for acquiescing through silence when risky rulings are made, and, when they can no longer be corrected at the trial level, unveiling them as new weapons on appeal. Finally, there is an element of institutional self-preservation in closing

14

> the door to what could be a flood of open-ended appellate opportunities.
>
> [State v. Robinson, 200 N.J. 1, 19 (2009) (quoting Frank M. Coffin, On Appeal: Courts, Lawyering, and Judging 84–85 (W.W. Norton & Co. 1994)).]

Following oral argument, the PCR judge issued his written decision on June 29, 2022. Bruen was decided on June 23, 2022. Therefore, defendant had an opportunity to present his constitutional challenge to the PCR judge prior to the issuance of the judge's decision. See Robinson, 200 N.J. at 20 ("'[O]ur appellate courts will decline to consider questions or issues not properly presented to the trial court when an opportunity for such a presentation is available unless the questions so raised on appeal go to the jurisdiction of the trial court or concern matters of great public interest.'" (quoting Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973))).

In Points IV, V, and VI, defendant challenges the judge's rejection of his contentions that his attorney was ineffective by failing to pursue a speedy trial motion and object to a purportedly inadequate factual basis. Defendant also challenges the judge's denial of his petition without an evidentiary hearing.

"[W]e review under the abuse of discretion standard the PCR court's determination to proceed without an evidentiary hearing." State v. Brewster, 429 N.J. Super. 387, 401 (App. Div. 2013). "If the court perceives that holding

an evidentiary hearing will not aid the court's analysis of whether the defendant is entitled to [PCR], . . . then an evidentiary hearing need not be granted." State v. Marshall, 148 N.J. 89, 158 (1997) (citations omitted).

An evidentiary hearing is only required when a defendant establishes "a prima facie case in support of [PCR]," the court determines that there are "material issues of disputed fact that cannot be resolved by reference to the existing record," and the court determines that "an evidentiary hearing is necessary to resolve the claims" asserted. State v. Porter, 216 N.J. 343, 354 (2013) (alteration in original) (quoting R. 3:22-10(b)). "[W]here . . . no evidentiary hearing was conducted," as here, "we may review the factual inferences the [trial] court has drawn from the documentary record de novo," and "[w]e also review de novo the court's conclusions of law." State v. Blake, 444 N.J. Super. 285, 294 (App. Div. 2016).

"To establish a prima facie case, defendant must demonstrate a reasonable likelihood that his or her claim, viewing the facts alleged in the light most favorable to the defendant, will ultimately succeed on the merits." R. 3:22-10(b). To establish a prima facie IAC claim, a defendant must demonstrate "by a preponderance of the credible evidence," State v. Echols, 199 N.J. 344, 357 (2009), that his or her attorneys' performance fell below the objective standard

of reasonableness set forth in Strickland, 466 U.S. at 687, and adopted in Fritz, 105 N.J. at 49-58, and that the outcome would have been different without the purported deficient performance. Stated differently, a defendant must show that: (1) counsel's performance was deficient; and (2) the deficient performance prejudiced the defense. Strickland, 466 U.S. at 687; Fritz, 105 N.J. at 58.

To establish the prejudice prong to set aside a guilty plea based on IAC, a defendant must show "that there is a reasonable probability that, but for counsel's errors, [the defendant] would not have pled guilty and would have insisted on going to trial." State v. DiFrisco, 137 N.J. 434, 457 (1994) (alteration in original) (quoting Hill v. Lockhart, 474 U.S. 52, 59 (1985)). To that end, "'a [defendant] must convince the court that a decision to reject the plea bargain'" and "insist on going to trial" would have been "'rational under the circumstances.'" State v. Maldon, 422 N.J. Super. 475, 486 (App. Div. 2011) (quoting Padilla v. Kentucky, 559 U.S. 356, 372 (2010)). That determination should be "based on evidence, not speculation." Ibid.

Failure to meet either prong of the two-pronged Strickland/Fritz test results in the denial of a petition for PCR. State v. Parker, 212 N.J. 269, 280 (2012) (citing Echols, 199 N.J. at 358). That said, "courts are permitted leeway to choose to examine first whether a defendant has been prejudiced, and if not,

to dismiss the claim without determining whether counsel's performance was constitutionally deficient."  State v. Gaitan, 209 N.J. 339, 350 (2012) (citation omitted) (citing Strickland, 466 U.S. at 697).

Applying these principles, we discern no abuse of discretion in the PCR judge's denial of defendant's PCR petition without an evidentiary hearing, and we affirm the denial substantially for the reasons stated in the judge's cogent written opinion.  Because there were no errors committed by defense counsel, defendant's cumulative error claim must fail as well.

Finally, in Point VII, defendant argues that he should be allowed to withdraw his guilty plea for a second time primarily "because he will be deported to Jamaica as a result of his plea."  Defendant claims "that he was never advised that he faced mandatory deportation if he were to plead guilty" and asserts that "permitting the withdrawal . . . will remedy the matter."

Although a motion to withdraw a guilty plea and a petition for PCR based on IAC may be filed together, "[t]hey must be considered separately."  State v. O'Donnell, 435 N.J. Super. 351, 368 (App. Div. 2014) (citing State v. McDonald, 211 N.J. 4, 15-26, 29-30 (2012)).  That is because a motion to withdraw a guilty plea is governed by Rule 3:21-1 while a petition for PCR is governed by Rule 3:22-1 to -13.  "[P]ost-sentence [withdrawal] motions are

subject to the 'manifest injustice' standard in <u>Rule</u> 3:21-1," which places "'a more stringent standard'" on the movant to obtain relief. <u>O'Donnell</u>, 435 N.J. Super. at 370 (quoting <u>State v. Norman</u>, 405 N.J. Super. 149, 160 (App. Div. 2009)). Under that standard, "'the burden rests on defendant, in the first instance, to present some plausible basis for his request, and his good faith in asserting a defense on the merits.'" <u>Smullen</u>, 118 N.J. at 416 (quoting <u>State v. Huntley</u>, 129 N.J. Super. 13, 17 (App. Div. 1974)).

A motion to withdraw a guilty plea is governed by the four-factor test established in <u>State v. Slater</u>, 198 N.J. 145 (2009). In evaluating the motion, a court must consider and balance: "(1) whether the defendant has asserted a colorable claim of innocence; (2) the nature and strength of defendant's reasons for withdrawal; (3) the existence of a plea bargain; and (4) whether withdrawal would result in unfair prejudice to the State or unfair advantage to the accused." <u>Id.</u> at 157-58. "No factor is mandatory; if one is missing, that does not automatically disqualify or dictate relief." <u>Id.</u> at 162. However, "the longer a defendant delays in seeking to withdraw a plea, the greater burden he or she will bear in establishing 'manifest injustice,' because the prejudice to the State under prong four will generally increase. Moreover, a defendant's reasons for delay

may also weigh against relief under factor two."  O'Donnell, 435 N.J. Super. at 370.

Here, as defendant points out, the PCR judge failed to address the withdrawal motion.  Ordinarily, we would remand the matter to the trial court to remedy the omission.  However, under the unique circumstances of this case, we reject defendant's request to withdraw his guilty plea for various reasons.  First, the claim is procedurally barred by Rule 3:22-4 because defendant could have raised the issue on direct appeal.  In the alternative, we also reject the claim on the merits.  Without substantiation, defendant invokes his innocence to support the first Slater factor and asserts that the case "would not involve much preparation on the part of the State" to support the fourth Slater factor.  However, the crux of defendant's claim is the second Slater factor, his reason for withdrawal, which is to avoid deportation.

Defendant was previously allowed to withdraw his guilty plea because he had misrepresented his citizenship status on the plea form.  After obtaining advice from an immigration attorney and assuring the plea judge that he was knowingly, voluntarily, and intelligently pleading guilty under the assumption that he would be deported, he now seeks to withdraw his plea a second time for

the very same reason—to avoid deportation. We cannot abide such gamesmanship.

"Generally, representations made by a defendant at plea hearings concerning the voluntariness of the decision to plead, as well as any findings made by the trial court when accepting the plea, constitute a 'formidable barrier' which defendant must overcome before he will be allowed to withdraw his plea." State v. Simon, 161 N.J. 416, 444 (1999) (quoting Blackledge v. Allison, 431 U.S. 63, 74 (1977)). "That is so because '[s]olemn declarations in open court carry a strong presumption of verity.'" Ibid. (alteration in original) (quoting Blackledge, 431 U.S. at 74). Defendant has failed to vault this formidable barrier.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

21